97  547
s101 587

PATRICK F. TREMBLAY vs. ÆTNA LIFE INSURANCE COMPANY.

Androscoggin.    Opinion June 26, 1903.

*Foreign Judgment.   Res Judicata.   Jurisdiction.   Service.   Parties.*
*Default.    Life Insurance.    Assignment of Policy.    Assent of*
*Company.    Beneficiary—Vested Interest.*

A foreign judgment is merely prima facie evidence of what it purports to decide.

The doctrine of res judicata extends only to those facts which must necessarily be made to appear as a basis of the judgment, and without a showing of which the judgment could not have been rendered.

It is necessary before a court can render a valid judgment that it shall first acquire jurisdiction over the parties, the subject matter of the suit and the process.

A writ, declaration, summons, publication, default and judgment against the heirs of J. O. T., defendants, giving no name or names, would not give the courts of this State jurisdiction to render a valid judgment in personam; nor upon their face, would they furnish a basis for a judgment in rem.

In a case where judgment is rendered on default without personal notice to the defendant, the false allegation by plaintiff of a fact so material that without its existence his pleading fails to set out a cause of action, operates as a fraud and is well calculated to deceive the court.

The acts and recitals of a court acting without jurisdiction cannot conclusively bind the defendant; nor can such acts and recitals serve as conclusive evidence of facts which would give the court jurisdiction.

An assignment of a life insurance policy executed in compliance with the terms of the policy by the assured and the only beneficiary, divests both of them of, and vests the assignee with the entire legal interest in the policy.

A letter from an insurance company, acknowledging the receipt of such an assignment of a life policy issued by it, in which letter the company states that it will place the assignment "on file for such attention as it may deserve when such policy becomes a claim," is a sufficient indication of the company's assent to the assignment.

The mere statment or recital in such an assignment that it is subject to a claim, if there be in fact no claim, would be surplusage, and would not affect the assignment of the entire sum.

A foreign judgment based upon an invalid assignment of a life insurance policy can have no binding force upon the courts of this State either by way of estoppel or under the doctrine of res judicata.

On report.    Judgment for plaintiff.

Action of debt on a policy of life insurance.

Plaintiff claimed under an assignment executed both by the assured and his wife who was the beneficiary named in the policy.

One J. B. Cloutier claiming the fund under color of a prior assignment executed in fact by the husband alone, had brought suit in the Superior Court of the Province and District of Quebec and recovered judgment for the insurance money, which had been previously deposited with the Provincial Treasurer in accordance with the Revised Statutes of the Province of Quebec.    This judgment the Insurance Company interposed as a defense to this action of debt commenced in this court below in Androscoggin County.

The facts appear in the opinion.

H. W. Oakes, J. A. Pulsifer and F. E. Ludden; P. F. Tremblay, for plaintiff.

R. W. Crockett, for defendant.

SITTING:   WISWELL, C. J., STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SPEAR, J.    This is an action of debt to recover the amount alleged to be due upon a life insurance policy.    On August 13, 1885, the Ætna Life Insurance Company of Hartford, Connecticut, issued a policy through its Canadian branch on the life of Jean O. Tremblay of the Province of Quebec, in the sum of $2000, payable at his death to his wife Arthemise D. Tremblay, or in event of her death before his, to his executors, administrators, or assigns.    On November 24, 1891, this policy was assigned by Jean O. Tremblay, without the joinder of his wife, to J. B. Cloutier of Quebec as collateral security. On January 14, 1901, Jean O. Tremblay and Arthemise D. Tremblay executed two other assignments of the same policy to their son Patrick F. Tremblay of Lewiston, Maine, the plaintiff in this case. A duplicate of but one of these assignments was forwarded to the

company. This assignment was made upon the company's blank form and is as follows: "For value received, we hereby transfer, assign and turn over unto Patrick F. Trémblay, Attorney at Law and Notary Public of Lewiston, Maine, as collateral, all our right, title and interest in Policy of Life Insurance 149,296, issued by the Ætna Life Insurance Company of Hartford, Connecticut, and all benefit and advantage to be derived therefrom to the extent of such interest as he may have when said policy becomes a claim, subject to J. B. Cloutier's claim.

Dated at Quebec this 14th day of January, 1901."

This assignment was duly executed and forwarded to the company and its receipt acknowledged in a letter, as follows:

"Ætna Life Insurance Company.

Hartford, Conn., January 19, 1901.

P. F. Tremblay, Esq.,

256 Lisbon St.,

Lewiston, Me.

Dear Sir:—

We have your favor of the 16th inst. enclosing an assignment of policy No. 149,296 on the life of Jean O. Tremblay, executed by said insured and Arth. D. Tremblay, in favor of yourself, under date of January 14, 1901 subject to the claim of J. B. Cloutier, which we place on file for such attention as it may deserve when such policy becomes a claim.

Yours truly,

J. L. English."

The assignment was executed by both the assured and the only beneficiary, and consequently divested both of them of, and vested the assignee with, the entire legal interest in the policy, the exception to Cloutier being an equitable interest only, to which allusion will be made later.

J. O. Tremblay died January 21, 1901. At his death there was due on the policy $1959.49. Proofs of death were filed accompanied by the affidavit of both J. B. Cloutier and P. F. Tremblay as assignees, and of Arthemise D. Tremblay as beneficiary. P. F. Tremblay in his affidavit claims "all but what is excepted by assignment

between $500 and $1000." Arthemise D. Tremblay in her affidavit states that the policy was assigned to Cloutier as above stated and that the assignment is still in force; and also that a further assignment was made to her son January 14, 1901. Cloutier in his affidavit claimed the full amount due upon the policy. This dispute having arisen between the claimants, the company, in accordance with the Revised Statutes of the Province of Quebec, deposited the money due, in the office of the Provincial Treasurer, which exonerated the company from the payment of costs in any litigation which might arise upon the policy. All the claimants were properly notified of the deposit. On April 22, 1901, J. B. Cloutier commenced proceedings to secure the money thus deposited, in the Superior Court at Quebec, against the heirs of J. O. Tremblay, defendants, and Dame Arthemise Dumais et al., mise-en-cause. The defendants and the Ætna Life Insurance Company, Arthemise Dumais Tremblay, widow, and Patrick F. Tremblay, these latter two of Lewiston, Maine, U. S. A., mise-en-cause, the said Patrick F. Tremblay furthermore, one of the defendants aforesaid, mise-en-cause, were condemned to appear at court on a day certain, and service upon all these parties was made by publication. On the 8th day of June no appearance having been made by any of the defendants or by Arthemise Dumais Tremblay or Patrick F. Tremblay, the court upon an ex parte hearing rendered judgment for the plaintiff which was that it "maintains the present action, consequently adjudges and condemns the defendants to pay to the plaintiff the sum of $2118.39, with interest from the 23rd day of April last and costs." It does not appear that any steps were taken to have administration upon the estate of Jean O. Tremblay and no administrator was mentioned in this suit, as the judgment shows. The plaintiff, notwithstanding the judgment rendered by the court at Quebec, has brought an action against the Ætna Life Insurance Company in the Supreme Judicial Court for Androscoggin County, as assignee of the policy. To this action, the defendant interposes the following defenses:

1. The suit is brought in the name of the assignee the assignment not having been assented to by the Insurance Company.

2. The assignment is of a part of an entire sum.

3. The matter is res judicata and the plaintiff is bound by the record in the Canadian suit.

4. The evidence shows that the claim of J. B. Cloutier exceeds the amount due under the policy.

The plaintiff in reply controverts all of the above defenses and in addition asserts that, even if the Canadian judgment was in other respects valid, the claim of J. B. Cloutier as presented in the Canadian suit, upon which the judgment was issued, was to a large extent clearly a fraudulent one.

The first matter of defense interposed, is to the right of the plaintiff to maintain his action on the ground that, being assignee of the policy and the assent of the company being required to make the assignment valid, the plaintiff had not, at the date of his action, secured such assent. Such objection cannot prevail. The letter of the company, acknowledging the receipt of the assignment, was a sufficient indication of their assent. The assignment was upon a printed blank prepared and furnished by the company. The assignors, by their assignment, conveyed to the assignee "to the extent of such interest as they may have *when said policy becomes a claim.*" The acknowledgment of the receipt of the assignment was "for such attention as it may deserve *when said policy becomes a claim.*" The language of acknowledgment is as broad as the language of the assignment. The assignment became a claim upon the death of Jean O. Tremblay. What did the company mean when they wrote the assignee that they had placed the assignment on file? That it was an act of dissent? What, when they said that, upon its becoming a claim, they would give it such attention as it deserved? That it was invalid and hence entitled to no attention? Did they intend to convey to the plaintiff the idea that his assignment, after they had written him this letter, was invalid? If they did, they were very unfortunate in their form of expression, for it must necessarily have operated as a complete deception upon his mind. If it was their intention to decline to accept the assignment, they could easily have made their purpose clear. It cannot be possible that they so intended. It would be a contradiction of terms to hold that they did. On the other hand, construing the phraseology of their letter "according to

the common meaning of the language" and no violence will be done in evolving the conclusion that, placing the assignment on file, and agreeing, when the occasion arose, to give it due consideration, operated as an express acceptance. Nothing seems to be wanting to clothe their conduct with the idea of consent. We think the language used by the defendant company in acknowledging the receipt of the assignment was not only sufficient in its terms but intended by the company to convey their consent to the assignment. But consent is held to effectuate a new contract with the assignee.

*Grant* v. *Eliot and Kittery Mutual Fire Insurance Company*, 75 Maine, 196, is a case in which the widow of the owner succeeded to the title of the premises insured under his will. Later she conveyed all her right, title and interest in the premises to Mark A. Libby and on the same day by written assignment made over to said Libby the policy of insurance issued to Hiram R. Roberts, her husband in his lifetime, and the directors of the company indorsed their consent to the assignments. Still later Mark A. Libby conveyed the premises to the plaintiff and on the same day assigned the same policy to him, and the directors of the defendant company indorsed thereon their consent to this second assignment. The court, p. 204, say: "The defendants were paid for insuring a given sum to Hiram R. Roberts for a fixed term, and their contract was to pay to his assigns. By consenting to the assignment made by his executrix and devisee to her grantee, Libby, they agreed that Libby might be substituted and that the policy should represent to him just what it had to the party originally insured. The same thing was done when Libby conveyed the property and assigned the policy to the plaintiff. No element of a valid and binding contract between the plaintiff and defendant seems to be wanting." *Donnell* v. *Donnell*, 86 Maine, 518, is a case in which Kingsbury Donnell owned certain real estate with buildings thereon upon which he procured two policies of insurance. Later he conveyed his real estate to his sons and on the same day assigned to them the insurance policies. The court say, p. 522: "The conveyance would have rendered the contracts of insurance with Kingsbury Donnell null and void if the companies had not consented to the assignment of the policies. The effect of this transaction was to

make a new and original contract of indemnity with the assignees who were not indebted to the plaintiff and had no contract relations with him." "The assent of the company to the assignment was a renewal of the original contract to the assignee with all its force, effect and liabilities as well as its conditions and limitations." *Biddeford Savings Bank* v. *Dwelling-House Insurance Company*, 81 Maine, p. 571. The same doctrine obtains in Massachusetts. "The policies are in terms payable to the assured and his assigns. The assignments to the plaintiff, assented to by the insurers, transferred to him the legal title in the policies and the right to sue thereon." *Burroughs* v. *State Mutual Life Assurance Company*, 97 Mass. p. 360. "But we are of opinion that the assignments of the policy, with the express consent of the defendants, enables the assignees to sue on it in their own name; that such consent to the assignments operates as a promise to pay the loss to them." *Kingsley* v. *New England Mutual Fire Insurance Company*, 8 Cush. 400.

The second matter of defense is that the assignment is a part of an entire sum. This defense is based upon the clause in the assignment "subject to J. B. Cloutier's claim." There is no question but the assignment, if not modified by this clause, conveyed the entire legal interest in the policy to Tremblay, the assignee. Unless the clause attaches to the assignment a legal modification, it can have no effect. The mere statement that it was subject to a claim if in fact there was no claim, would be surplusage. This leads us to the consideration and determination of the validity in law of Cloutier's alleged assignment. The policy in question was made payable to Arthemise Dumais Tremblay, wife of the assured. It is well settled in this State that this policy being payable to her became a vested right. *Small* v. *Jose*, 86 Maine, p. 124. Neither the company, the husband nor a creditor could deprive her of it without her consent. *National Life Insurance Company* v. *Haley*, 78 Maine, p. 268, 272, 57 Am. Rep. 807. Applying these principles to the assignment of Cloutier and it becomes evident that it was entirely inoperative to vest in him any legal interest, as the beneficiary did not join in the assignment. But the defendant claims that the assignment, though not signed by the wife, is of such an equitable

character as to vest in him an interest that will be protected and enforced by a court at law; but *Palmer* v. *Merrill*, 6 Cush. 282, 286, 52 Am. Dec. 782, holds that "in order to constitute such an assignment two things must concur," the second of which is, "the transfer shall be of the whole and entire debt or obligation, in which the chose in action consists, and as far as practicable place the assignee in the condition of the assignor to receive the full debt due and to give a good and valid discharge to the party liable." The record clearly shows that Mrs. Tremblay did not assign to Cloutier her "whole and entire" interest in the policy. It may be, however, that, although she did not join in the assignment, she had by her acts conveyed to Cloutier an equitable interest which the assignee holds in trust for his benefit and which may be enforced by proceedings in equity. *Unity Mutual Life Assurance Association* v. *Dugan*, 118 Mass. 219; *Burroughs* v. *State Mutual Life Assurance Company*, 97 Mass. 359; *National Life Insurance Company* v. *Haley*, 78 Maine, 268, 57 Am. Rep. 807; *Duffy* v. *Metropolitan Life Ins. Co.*, 94 Maine, 418. Cloutier therefore had no interest, by virtue of his alleged assignment, which he could enforce in law, hence the phrase "subject to J. B. Cloutier's claim" did not affect the capacity of the assignment to effect a transfer of the entire legal interest in the policy to P. F. Tremblay.

The third defense offered is, that the whole matter is res judicata. "It has been repeatedly adjudged, that foreign judgments are prima facie evidence merely of the right and matter which they purport to decide." *McKim* v. *Odom*, 12 Maine, p. 94. This doctrine has been repeated by our courts, from the time is was above promulgated to the opinion of *Tourigny* v. *Houle*, 88 Maine, 406. Upon foreign judgments "the merits as well as the jurisdiction of the courts which rendered them may be inquired into." *Middlesex Bank* v. *Butman*, 29 Maine, p. 23. This opens to inquiry the validity of the Quebec judgment. The record of the case, showing the proceedings and judgment in the court at Quebec, discloses, upon inspection, that the plaintiff's complaint, corresponding to our declaration, was based entirely upon the evidence, and the assumed validity, of Cloutier's assignment; the judgment followed the complaint, hence, was neces-

sarily based upon the assignment; but we have already determined that the assignment, claimed by Cloutier, was invalid in law; therefore the judgment based upon the assignment was also invalid, there being no proof of facts upon which it was founded, and "a verdict and judgment are conclusive by way of estoppel only as to facts, without the existence and proof or admission of which they could not have been rendered." *Hill* v. *Morse*, 61 Maine, p. 543.

Upon another ground the proceedings, if not tainted with intentional fraud, operated as such upon the honesty of the judgment. The complaint, item 14, sets out that "the plaintiff (Cloutier) is regular assignee of the aforesaid policy, assignment being made to him by the late J. O. Tremblay *and his wife*, the said mise-en-cause." Without this allegation Cloutier set out no cause of action whatever. But the statement is not true. The assignment was not executed by the wife. It was signed by J. O. Tremblay only. It was therefore not made by the wife, as alleged in the complaint or declaration. The allegation operated as a fraud upon the court and was well calculated, especially in a case decided ex parte, without personal notice and upon default, to deceive it. Nor was the assignment filed with or assented to by the Insurance Company. The law invoked to defeat the validity of Tremblay's assignment, for want of consent, applies with force with respect to the validity of Cloutier's assignment. The case shows that it was neither signed by the wife nor consented to by the company, as required by the policy, to make it a valid assignment. "In all judgments by default, whatever may be their competency or regularity, every proceeding, indeed, from the writ and indorsements thereon down to the judgment itself, inclusive, is part of the record and is open to examination." *Penobscot R. R. Company* v. *Weeks*, 52 Maine, 460. "And the records of all courts are liable to be impeached if it can be done by inspection alone." Ib. 459. The judgment was upon default, but it is well settled that a default does not admit allegations in the complaint of fraud extrinsic to the cause of action." American Encl. of Law, vol. 5, 466. "The acts and recitals of a court not having acquired a jurisdiction, cannot be conclusively binding on him; *nor can acts and recitals be conclusive evidence of facts which*

*would give them jurisdiction."* Carleton v. *Bickford,* 13 Gray, p. 591, 596, 74 Am. Dec. 652. No more can a false statement in the declaration give jurisdiction.

Therefore the plaintiff, in the case at bar, did not admit by default, even if proper service had been made upon him, the untrue allegation set out in the declaration of Cloutier's writ. Nor did the proof presented to the court at Quebec sustain the allegation. It was evident, upon inspection of the proof offered, that Cloutier's alleged assignment was not executed by Tremblay's wife, and that her agreement to transfer a part of her interest in the policy, as collateral security, was not in law even an equitable assignment of her right. Hence there being no legal proof of the allegation set out in the declaration, that the assignment was made by the wife, the Quebec judgment was not founded upon the evidence of any legal claim, and therefore void.

"And if the judgment is wrongfully obtained by a fraud between the parties for the purpose of defeating the title of a third party, the latter may plead the matter in avoidance of a judgment. If the judgment has not been obtained by collusion with the debtor or with any fraudulent design, yet if it was unlawfully recovered to the injury of a third person, who cannot reverse it from error in being a party thereto, he can avoid it in the same manner." Caswell v. *Caswell,* 28 Maine, p. 237. "If, upon these facts, the judgment appears to be fraudulent against the creditors, any creditor on whom it is a fraud may give them in evidence." Pierce v. *Jackson,* 6 Mass. p. 244. Apply these principles to the proceedings before the court at Quebec and we think the judgment there rendered, even upon the ground of fraud, is not entitled to be considered res judicata against the right of the plaintiff to have his case determined on its merits.

There is still another reason why the proceedings at Quebec are not res judicata. "No court can rightfully render judgment in a cause until it has acquired complete jurisdiction over the parties, the subject matter of the suit, and the process." Penobscot R. R. *Company* v. *Weeks,* 52 Maine, p. 458. "But the records of *all* courts are liable to be impeached if it can be done by *inspection* alone; and if such inspection discloses want of jurisdiction over the person of the defendant, the judgment will be void against him for

that purpose." Ib. p. 439. "If the record negative the jurisdiction, or if it had not been extended, and the original papers do so, then the supposed judgment is void." *Tourigny* v. *Houle,* 88 Maine, p. 408. "Where it appears by the record itself that there was no appearance and no notice which he was bound to attend to, the judgment against him is a dead letter beyond the territory in which it was pronounced." *Middlesex Bank* v. *Butman,* 29 Maine, p. 25. Under these decisions the plaintiff in the present case is not bound by the proceedings in Quebec. No legal service of the writ was made upon him. He was a resident of a foreign country and the plaintiff knew his residence and alleged it in his writ to be in Lewiston, Maine, U. S. A. Service of the writ was by publication. The writ, declaration, summons, publication, default and judgment were against the heirs of Jean O. Tremblay, defendants, giving no name or names. Such a writ and such a service would not give our courts jurisdiction upon which a valid judgment could be rendered in personam.

Nor would the proceedings upon their face furnish a basis for a judgment in rem, even if we assume that the statutes of the Province, or the lex rei sitæ, are the same as our own. By our statutes a judgment in rem can be entered only against the property of the debtor certain liens excepted. *Plurede* v. *Le Vasseur,* 89 Maine, 172. P. F. Tremblay was not the debtor ; therefore no valid judgment in rem could be entered against the insurance money, in the hands of the Provincial Treasurer of which he held a legal title. The Quebec court therefore had no jurisdiction over the plaintiff Tremblay in personam or in rem, and could not render a binding judgment. The Revised Statutes of the Province of Quebec applying to this case and made a part of the exhibits are as follows: "Art. 1198. Whenever any person desires to pay any sum of money which is demanded of him by contending claimants, he may deposit the money he so desires to pay in the office of the Provincial Treasurer." "Art. 1199. In the case mentioned in the preceding article, the Treasurer shall pay over the amount deposited to the claimant, who shall produce and file an authentic copy of a competent judgment entitling him to the money, saving the right of the depositor,

if the deposit receipt has not been registered, and if the money has not been paid into court as a tender, to withdraw his deposit, before the same shall have been demanded by the claimant." There is no evidence in this case that the receipt was registered or that the money had been paid into court as a tender. The company, therefore, had full power and ample opportunity, being a party to the proceedings, even after the judgment was rendered, to fully protect itself against any doubt of the legality of the Quebec proceedings by withdrawing its deposit from the treasury. Although having a full knowledge of all the transactions of Cloutier and P. F. Tremblay with respect to their claimed assignments, and of the conditions imposed by themselves in order to make an assignment valid, together with a presumed knowledge of the law, yet they stood by and allowed the proceedings of Cloutier to be consummated without the slightest intervention. It would not be a great strain upon the imagination, under the circumstances in this case, to read between the lines of these proceedings the subtle goodwill of the company contributing to the result attained. They can neither legally nor morally complain of the fall of the Quebec judgment. The case was reported with the stipulation, "if the law court is of opinion that the action is maintainable, it shall render such judgment as the rights of the parties require." The action is maintainable. In accordance with the stipulation,

> *Judgment for the plaintiff for $1959.49, and costs, and interest from April 21st, 1901, ninety days after the death of the insured.*