1997 ME 155

**Jean–Francois ROY**

v.

**John S. BUCKLEY, Sr.**

Supreme Judicial Court of Maine.

Argued March 5, 1997.
Decided July 18, 1997.

---

Peter B. Bickerman (orally), Augusta, for plaintiff.

William C. Knowles (orally), Seth W. Brewster, Carl E. Kandutsch, Verrill & Dana, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Jean–Francois Roy appeals from the summary judgment entered in the Superior Court (Cumberland County, Saufley, J.) in favor of John S. Buckley, Sr. Roy contends that the court erred by ruling that a Quebec judgment he obtained against Buckley could not be recognized and enforced in Maine pursuant to principles of comity because the means of service of process in the underlying action failed to satisfy United States Constitutional standards of due process. We agree and vacate the judgment.

I.

[¶ 2] Roy and Buckley were two of the three shareholders of Carex Services, Inc., a Canadian corporation.[1] During the events relevant to this appeal, Roy resided in Quebec and was represented by the Quebec law

1. The other shareholder was Buckley's son, John S. Buckley, Jr., who is not a party to this litiga-tion.

firm of Fournier, Perron. Buckley has resided at 6 Birds Nest Lane, Scarborough, Maine, since 1989. In the late 1980s Roy managed Carex and occasionally guaranteed its debts personally.

[¶ 3] In 1990, when Roy sold his Carex stock (held by Les Investissements Jean-Francois Roy Ltee, the investment company of which he was sole shareholder) back to Carex, Roy and Buckley entered into a Memorandum of Agreement (the Agreement) which indemnifies Roy and his investment company for all of Roy's personal guarantees of Carex debt. The sections of the Agreement relevant to this appeal include the basic terms of indemnification, provisions relating to notice of claims, and the forum selection clause. These provisions state in pertinent part, respectively:

> Carex, Buckley, Jr. and Buckley, Sr. (the "[I]ndemnifying Parties") hereby jointly and severally, without the benefit of discussion or division, agree, covenant and undertake to indemnify, defend and hold JFR [the corporate shareholder owned solely by Roy] and Roy (the "Indemnified Parties") harmless, from and against any and all claims, losses, liabilities, costs and expenses (including, without restriction, legal costs, interests and penalties) suffered or incurred by any of the Indemnified Parties (hereinafter referred to as "claims" or a "claim") arising as a result of any of the Indemnified Parties having given its personal guarantee with respect to any loan or generally any indebtedness of Carex or any of its subsidiaries . . . . including, without in any way restricting the generality of the foregoing, amounts owing by Carex to the following creditors: . . . [including] . . . Royal Bank. . . .

> . . . .

> The [I]ndemnified Parties shall promptly advise the Indemnifying Parties of any Claim and provide the same with full details thereof, including copies of any document, correspondence, suit or action received by or served upon any of the Indemnified Parties. . . . The Indemnified Parties shall fully cooperate with the Indemnifying Parties in any discus-

sion, negotiations or other proceedings relating to any Claim.

> . . . .

> This agreement shall be governed and construed in accordance with the laws of the Province of Quebec and the courts of such province shall have exclusive jurisdiction over any dispute hereunder. The Indemnifying Parties and the Indemnified Parties irrevocably submit to the courts of the province of Quebec in any action or proceedings arising ou[t] of or relating to this Agreement and hereby elect domicile, for all such purposes, in the judicial district of Montreal, and they furthermore agree to be bound by any final judgment of the said courts and undertake not to seek, and hereby waive, any review by the courts of any other jurisdiction with respect to the merits of any judgment obtained against either of them pursuant to this Agreement.

The Agreement also refers expressly to Buckley's residence, stating that he is "John S. Buckley, Sr., businessman residing at 6 Birds Nest Lane, Scarborough, in the state of Maine, United States of America." The Agreement does not prescribe a method for service of process.

[¶ 4] After the Agreement was executed Carex defaulted on several obligations, including loans made by Royal Bank and guaranteed by Roy. In 1992 the Bank demanded payment of the amounts owed from Carex, Roy, and Buckley's son, but not Buckley himself. At this time, however, Buckley was the principal owner of Carex. Roy neither paid the amounts demanded nor informed Buckley of the claim as required by the Agreement. In 1993 Royal Bank filed suit in the Superior Court of Quebec, District of Montreal (the Quebec court) against Roy and Buckley's son, seeking recovery of $565,-323.85 (Canadian), plus interest. Roy's Quebec counsel demanded that Buckley remit the sum sought by the Bank in the litigation within five days of receipt of a letter dated May 25–nearly a year after the Bank's formal demand for payment and two months after it filed suit—that he sent by registered mail to Buckley's Maine address. The demand letter states that if payment would not be forthcoming, "we have been instructed by

our client to institute legal proceedings without further notice of delay." Buckley acknowledges that he received the letter and decided not to respond to it.[2]

[¶ 5] In June Roy filed against Buckley and Buckley's son in the Quebec court a Declaration in Warranty (the Declaration), the equivalent of a third-party complaint as to Buckley and a cross-claim as to Buckley's son in the suit brought by Royal Bank against Roy and Buckley's son. Roy first attempted to serve Buckley by serving a Quebec attorney who had represented Buckley during negotiation of the Agreement with a "Motion to Call a Guarantor," but the attorney apparently informed Roy that he was not authorized to accept service of process on Buckley's behalf; neither the Agreement nor any other document so designates him. Roy then obtained permission from the Quebec court to serve Buckley by registered mail, a mode of service alternative to personal service employed pursuant to Quebec law in certain circumstances. Roy's attorneys sent a summons and a copy of the Declaration to Buckley's residence in Maine by registered mail, return receipt requested, in an envelope on which the return address was that of Roy's attorneys Fournier, Perron. Buckley asserts there is "no evidence that this [registered] letter was actually delivered to [his] residence," and yet he does not deny that the letter was addressed to his residence, that he refused receipt, and that the envelope was returned to Roy's attorneys marked "Refused." Buckley claims he refused receipt because of prior bad experiences he allegedly had with Roy and his attorneys, and claims he was unaware that the envelope contained a summons and a complaint.

[¶ 6] Roy's attorneys then obtained the Quebec court's permission[3] to serve the declaration by yet another alternative method, publication, and placed a legal notice describing the nature of the litigation, informing Roy of his right to appear, and describing the consequences of not doing so within 30 days, in the September 8, 1993, edition of the *Portland Press Herald.* Buckley claims he never saw the notice. Roy's attorneys did not attempt to send another copy of the summons and complaint, or a copy of the newspaper notice, by first-class mail to Buckley's residence, nor did Roy attempt to personally serve Buckley in the Quebec action. He did, however, personally serve Buckley in the action underlying this appeal in February 1995.

[¶ 7] Buckley did not appear in the Quebec lawsuit and did not otherwise defend the action brought by Roy. Roy asserts that he was required to continue to defend the Bank's action without any assistance, despite what he claims were Buckley's contractual obligations pursuant to the agreement to defend Roy, indemnify him, and hold him harmless from the Bank's claims. In 1994 Roy entered a settlement agreement with the Bank and the Quebec court subsequently issued a default judgment against Buckley in the third-party action in the amount of $225,-000.00 (Canadian), plus interest and costs. Buckley claims that he did not appear in the action involving the Bank because he was unaware of that suit until 1994, when one of Roy's Maine attorneys called him to collect on the default judgment after it was entered that August. Buckley never appealed or sought to modify the default judgment in the Quebec courts nor paid any portion of the judgment.

**2.** The sum demanded, $565,323.85 (Canadian), was more than twice the amount of Roy's settlement with the Royal Bank, $226,382.96 (Canadian). Buckley asserts that he did not respond to the demand letter because he "did not trust either Roy or his attorneys," and because responding would have resulted in a $340,000 (Canadian) windfall for Roy. However, he does not explain why responding to the letter necessarily would have entailed sending Roy any money, at least in the first instance.

**3.** In his motion for permission to serve Buckley by publication, and after explaining that the envelope containing process in the Quebec action that was sent by registered mail to Buckley's address and "returned by mail to the undersigned attornies[sic], because [it] had been refused," Roy reminded the Quebec court that he already had "served an injunction [the demand letter] by registered mail to... John Buckley Sr., to said address within the framework of this action on May 26, 1993,...."

■ [¶ 8] In 1995 Roy filed the present complaint seeking recognition and enforcement of the default judgment against Buckley. Buckley filed a motion to dismiss and Roy responded by filing a motion for a partial summary judgment. After a hearing, the court treated Buckley's motion to dismiss as one for a summary judgment, which it entered in his favor, and denied Roy's motion for a partial summary judgment. The court's order states that service by publication "in the underlying Canadian action failed to meet [United States constitutional] due process standards ... and on that basis this court cannot afford the Canadian judgment full faith and credit[4] or allow its enforcement."

## II.

■ [¶ 9] In reviewing an appeal from the entry of a summary judgment we view the evidence in the light most favorable to the party against whom judgment was entered and review the trial court's decision for errors of law. *Gonzales v. Commissioner, Dept. of Public Safety*, 665 A.2d 681, 682 (Me.1995). At the summary judgment stage of the proceeding, the court's task is not to decide any disputed factual questions, but to determine whether the record before the court generates a genuine issue of material fact. *Casco Northern Bank, N.A. v. Edwards*, 640 A.2d 213, 215 (Me.1994).

■ [¶ 10] The application of the doctrine of comity, a recognition which one nation extends within its own territory to the judicial acts of another, is a question of law that may be resolved by the court on a motion for a summary judgment. *Society of Lloyd's v. Baker*, 673 A.2d 1336, 1338 (Me. 1996). As we have stated,

> [c]omity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience and expediency. Although more than mere courtesy and ac-

commodation, comity does not achieve the force of imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect.

*Id.* (quoting *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir.1971) (citations omitted)).

■ [¶ 11] The Canadian judgment against Buckley is *prima facie* evidence of his liability. *Society of Lloyd's*, 673 A.2d at 1338. Moreover, Canadian judgments satisfy the requirements articulated by the United States Supreme Court more than a century ago that the foreign judgment sought to be enforced

> appear[ ] to have been rendered by a competent court, having jurisdiction of the cause and of the parties and upon due allegations and proofs, and the opportunity to defend against them, and its proceedings are according to the source of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is *prima facie* evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice....

*Hilton v. Guyot*, 159 U.S. 113, 205–06, 16 S.Ct. 139, 159–60, 40 L.Ed. 95 (1895); *see also Ritchie v. McMullen*, 159 U.S. 235, 240–42, 16 S.Ct. 171, 173–74, 40 L.Ed. 133 (1895) (upholding enforcement of an Ontario default judgment); *United States v. Boots*, 80 F.3d 580, 587 (1st Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 263, 136 L.Ed.2d 188 (1996) (courts generally will enforce foreign non-tax civil judgments unless due process considerations interfere); *Petition of Breau*, 132

---

4. Constitutional and statutory provisions for full faith and credit apply only to decrees and judgments of domestic sister states; decrees and judgments of foreign nations are recognized pursuant to principles of comity. *Slessinger v. Secre-* *tary of Health & Human Servs.*, 835 F.2d 937, 940 n. 1 (1st Cir.1987); *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir.1971) (cited in *Society of Lloyd's v. Baker*, 673 A.2d 1336, 1338 (Me.1996)).

N.H. 351, 565 A.2d 1044, 1049 (1989) (Canadian judgments are generally cognizable in United States courts).

[¶ 12] The relevant inquiry is not whether the action was fully tried in the foreign forum,[5] but whether "there has been *opportunity* for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after *due citation* or voluntary appearance of the defendant, . . ." *Hilton,* 159 U.S. at 202, 16 S.Ct. at 158 (emphases added); *see Tahan v. Hodgson,* 662 F.2d 862, 864 (D.C.Cir.1981) ("due citation" means effective service of process). "[P]rocess which is a mere gesture is not due process," but service of process comports with the requirements of due process when it is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *see Tulsa Prof'l Collection Servs., Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988) ("whether a particular method of notice is reasonable depends on the particular circumstances"); *cf. Restatement (Third) of Foreign Relations* § 482(2)(b) cmt. a (1987) (when defendant has no notice of pendency of action resulting in the judgment in question and no attempt was made to give notice by means reasonably calculated to do so, the judgment does not ordinarily qualify for recognition). In other words, notice "cannot be given by methods or under circumstances which the giver of notice could reasonably anticipate will be ineffective in communicating knowledge to the person . . . entitled to receive notice." *Cummings v. Town of Oakland,* 430 A.2d 825, 831 (Me.1981).

[¶ 13] Far from constituting a "mere gesture," the procedures employed by Roy were reasonably calculated to provide notice to Buckley given all the relevant circumstances.[6] In 1993 Roy's attorneys sent Buckley the demand letter by registered mail advising him of the Canadian proceedings. Buckley received this letter. Buckley concedes that soon thereafter he received registered mail that he knew was from Roy's attorneys, and chose to refuse receipt because of dealings with them in the past that were unpleasant for him. The envelope he refused contained a summons and a copy of the Declaration. Only after this attempt to serve process by registered mail failed did the Quebec court authorize notice by publication.

[¶ 14] Service by mail has been identified as a satisfactory alternative. *See Mennonite*

---

**5.** *See Somportex,* 453 F.2d at 442–43 ("In the absence of fraud or collusion, a default judgment is as conclusive an adjudication between the parties as when rendered after answer and complete contest in the open courtroom."); *see also Tahan v. Hodgson,* 662 F.2d 862, 866 (D.C.Cir.1981) (enforcing Israeli default judgment); *Ackermann v. Levine,* 788 F.2d 830, 842, 845 (2d Cir.1986) (enforcing German default judgment); *see also Restatement (Third) of Foreign Relations* § 481 cmt. i (1987) ("Unlike courts in many foreign states, courts in the United States generally give the same direct effect to default judgments as to judgments following proceedings in which all parties participated.").

**6.** This case is readily distinguishable from those in which the procedure used in a foreign jurisdiction is essentially a ruse and the principles of comity therefore do not require recognition and enforcement of the foreign judgment thereby secured. *See Choi v. Kim,* 50 F.3d 244, 249–51 (3d Cir.1995) (refusing to enforce South Korean default judgment where confession of judgment pursuant to "compulsory execution" clause in "notarial deed" did not satisfy due process due to lack of post-judgment notice and hearing before deprivation of debtor's property); *Mata v. American Life Ins. Co.,* 771 F.Supp. 1375, 1386–88 (D.Del.1991), *aff'd,* 961 F.2d 208 (3d Cir.1992) (refusing to enforce Bolivian default judgment where purported service on insurer through its former agent failed to provide even actual notice and afford an opportunity to defend); *Tremblay v. Aetna Life Ins. Co.,* 97 Me. 547, 550, 557, 55 A. 509 (1903) (refusing to enforce a Canadian default judgment where attempt to serve defendants by means of publication alone); *see also Society of Lloyd's,* 673 A.2d at 1339–40 (discussing relief from default judgment where prevailing party's fraudulent conduct prevents the defaulting party from contesting the action or having knowledge of the pending suit); *Restatement (Third) of Foreign Relations* § 482(2)(c) cmt. e (denial of recognition of foreign judgment given fraudulent action by prevailing party that deprives losing party of adequate opportunity to present case (citing *Restatement (Second) of Judgments* § 68 cmt. b (1982) (relief from default judgment when failure to appear is attributable to fraud))).

*Bd. of Missions v. Adams,* 462 U.S. 791, 798–800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983) ("notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition ... if [a party's] name and address are reasonably ascertainable"); *Tulsa Prof'l,* 485 U.S. at 490, 108 S.Ct. at 1347 ("We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice."); *Weigner v. City of New York,* 852 F.2d 646, 649–51 (2d Cir.1988) (discussing extensively sufficiency of notice by mail and acknowledging the advantages of certified mail, return receipt requested).[7] Such service has been held to comport with due process even when delivered in the form of registered mail that is refused. *See Virginia Lime Co. v. Craigsville Distrib. Co., Inc.,* 670 F.2d 1366, 1367–69 (4th Cir.1982) (default judgment upheld where notice deemed sufficient even though receipt was refused, given that mail was reasonably calculated to reach the interested party at one of his business addresses); *see also* 62B Am.Jur.2d, *Process* § 228 at 926, § 229 at 926–27(1990) (citing cases in which refusal of receipt did not vitiate validity of service).

[¶ 15] Buckley knew that pursuant to the Agreement he was to indemnify Roy for liability arising from Carex's debts. Buckley was the principal shareholder in Carex, which had defaulted on its obligation to Royal Bank. In turn, Royal Bank brought suit against Roy as guarantor and against Buckley's son as a co-defendant. Buckley, on receipt of the demand letter from Roy's attorneys sent by registered mail, could only understand that Roy would sue him unless he provided indemnification pursuant to the terms of the Agreement. Indeed, the demand letter advises that a lawsuit will follow if payment is not forthcoming. In these circumstances, Buckley's refusal to accept receipt of the registered mail from Roy's attorneys containing a summons and a copy of the declaration was tantamount to an evasion of service of process.

[¶ 16] We recognize that such circumstances might not justify service by publication pursuant to the Maine Rules of Civil Procedure. *See* M.R. Civ.P. 4(g). However, because the procedures employed by Roy were reasonably calculated to provide notice to Buckley and do not offend our concepts of due process, the imperatives of comity require our courts to recognize the Canadian judgment against Buckley.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

---

**7.** *See also Restatement (Second) of Judgments* § 2 cmt. a ("use of registered or certified mail [has] a likelihood of giving actual notice approximating that of common law service of process").