■ ALLIANCE PROPERTY MANAGEMENT AND DEVELOPMENT, INC., Respondent, v ANDREWS AVENUE EQUITIES, INC., Defendant, and CITY OF NEW YORK, Appellant.—Order, Supreme Court, Bronx County (Bertram Katz, J.), entered March 6, 1987, which granted plaintiff-respondent's motion for reargument of defendant-appellant's motion to vacate the judgment of foreclosure and sale entered January 17, 1983, to dismiss the complaint, and to vacate respondent's notice of pendency; and, which, upon reargument, denied appellant's motion, affirmed, without costs.

In June 1980, respondent's assignor, the Long Island Savings Bank, commenced a mortgage foreclosure action for the subject property located at 1950 Andrews Avenue in The Bronx. Appellant, named as a party defendant, served a notice of appearance and waiver. Thereafter, the bank assigned its interest to respondent which was substituted in this action.

On April 28, 1982, appellant commenced an in rem tax foreclosure proceeding against more than 5,000 parcels of real property in The Bronx, including the subject property. Although the mortgage foreclosure action in which appellant was a party was still pending, appellant gave respondent no notice that it had commenced an in rem tax proceeding. A judgment of foreclosure and sale was entered in respondent's favor on January 17, 1983, and appellant did not appeal said judgment.

Respondent did not immediately attempt to sell the property because of the depressed real estate market in that area of The Bronx at that time. On July 10, 1984, a default judgment was entered in the tax foreclosure proceeding and appellant's Commissioner of Finance then issued a deed conveying title to the property to appellant. In early 1986, respondent, still unaware of the tax foreclosure, began proceedings to sell the property through a court-appointed Referee by

publishing the required notice of foreclosure. Several months later, in August 1986, appellant notified the Referee and respondent's counsel of the in rem tax foreclosure which had "extinguished" respondent's mortgage lien, and of the transfer of title to appellant.

Appellant, apparently unaware that it had already appeared in the mortgage foreclosure action, sought leave to intervene in that action, to vacate the judgment of foreclosure and to dismiss respondent's complaint. Respondent initially defaulted and appellant's motion was granted on default. However, respondent thereafter moved to reargue and, upon reargument, prevailed. The court rejected appellant's claim to title in the subject property because the in rem tax foreclosure occurred subsequent to entry of respondent's judgment of foreclosure and sale, and without notice to respondent. The court also found that appellant's rights would not be prejudiced if the mortgage foreclosure sale were to go forward because the proceeds would be subject to the liens held by appellant.

Appellant maintains that respondent was barred from challenging the validity of the tax deed under section 11-412 (c) of the Administrative Code of the City of New York which confers a conclusive presumption of validity on such a deed two years after it has been recorded. Respondent, however, argues that this period of limitation cannot extinguish its claim because it was never given notice of the tax foreclosure proceeding even though appellant knew or should have known of respondent's interest in the subject property. According to respondent, appellant was required, under the United States Supreme Court's ruling in *Mennonite Bd. of Missions v Adams* (462 US 791 [1983]), to provide notice reasonably calculated to apprise respondent of the pending tax proceeding.

In *Mennonite Bd. of Missions (supra)*, the United States Supreme Court invalidated an Indiana statute, which provided for notice of tax sales by publication only, as violative of a mortgagee's Fourteenth Amendment right not to be deprived of its property without due process of law. Unlike Indiana, however, New York provides for notice by mail of an in rem tax foreclosure to interested parties who have filed owner's registration cards with the designated officials *(see,* Real Property Tax Law § 1126; Administrative Code §§ 11-406, 11-416). The constitutionality of such a provision was not addressed in *Mennonite Bd. of Missions.*

The two appellate departments of this State which have addressed this question have reached different conclusions. In

*Matter of Foreclosure of Tax Liens by County of Erie (Manufacturers & Traders Trust Co.)* (103 AD2d 636, 640 [1984]), the Fourth Department found New York's notice scheme constitutionally inadequate because the State "has an obligation to all mortgagees, not merely those who request notice". However, the Second Department recently upheld New York's in rem notice provision as a reasonable balance between the State's interest in collecting taxes, without the costly and time-consuming burden of conducting a title search to identify parties with an interest in the delinquent parcel, and the property rights of those parties *(Matter of Tax Foreclosure No. 35,* 127 AD2d 220 [Niehoff, J. P., 1987]).

In this case, however, we find no such countervailing governmental interest. While a governmental body is not required to undertake "extraordinary efforts to discover the identity and whereabouts of a mortgagee" *(Mennonite Bd. of Missions v Adams, supra,* at 799, n 4), no extraordinary efforts were required here to identify respondent. Appellant had actual notice of respondent's interest, identity and whereabouts, because it was a party to respondent's mortgage foreclosure action. Where a property owner's identity and whereabouts are readily ascertainable, notice by publication is not sufficient. *(Supra.)*

The dissent maintains that appellant should not be bound by the "pro forma joining of the city in the mortgage foreclosure proceeding". However, appellant elected to treat its appearance in that action in a "pro forma" manner, ignoring entry of the judgment of foreclosure and sale even though it knew, or should have known, that the delinquent taxes had not been paid during the pendency of that litigation. Indeed, the matter was treated so casually that appellant did not even know it had appeared in the action. We can see no reason why appellant's decision to treat judicial process in this manner should outweigh respondent's due process rights to adequate notice.

The Supreme Court has long held that "process which is a mere gesture is not due process" and that the means employed for giving notice "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it" *(Mullane v Central Hanover Trust Co.,* 339 US 306, 315 [1950]). In *Schroeder v City of New York* (371 US 208 [1962]), notice by publication was deemed inadequate to apprise a property owner of condemnation proceedings when her name and address were readily ascertainable from the deed record and tax rolls. The owner in that case was not barred

from challenging the State's action even after the three-year period of limitation had expired *(supra,* at 210). Consequently, respondent is not now barred from challenging this deed, obtained without adequate notice.

The court below was correct in denying the motion to vacate the judgment of foreclosure and sale. While we agree that appellant has failed to show that it will be prejudiced if the foreclosure sale goes forward, given that this sale is subject to appellant's tax liens, we also find that appellant did not establish grounds warranting such relief under CPLR 5015 (a). Initially, appellant sought leave to intervene and to vacate the foreclosure judgment based on the mistaken belief that it had not been a party to the action and that the foreclosure judgment had been entered in 1986, two years after its tax deed was recorded. Subsequently, appellant conceded its error on both points. The foreclosure judgment had, in fact, been entered in 1983, one year before judgment was entered in the in rem tax proceeding and appellant's deed was recorded. Inasmuch as appellant did not obtain title to the property until after judgment had been entered in the mortgage action, this claim cannot be considered "newly discovered evidence" which might have affected the outcome of the mortgage action. Appellant did not default in that action, having filed a notice of appearance and waiver, nor was there any misrepresentation or misconduct by the adverse party, and there is no basis for a jurisdictional challenge to the foreclosure judgment. Concur—Carro, Milonas, Rosenberger and Smith, JJ.

Sandler, J. P., dissents in a memorandum as follows: The facts are sufficiently set forth in the court's memorandum to permit consideration of the several issues raised on this appeal.

The threshold issue presented, of course, is the constitutionality of that section of the Administrative Code of the City of New York (§ 11-417 [a]) that provides that "any person having an interest in real property who is not entitled to have tax bills mailed to him or her * * * including mortgagees, lienors, encumbrancers" shall receive notice of in rem tax foreclosure proceedings affecting the real property that the person has an interest in by filing an in rem card, without charge, setting forth information relevant to the interest.

As the court's memorandum opinion notes, the issue raised by this procedure was not considered by the United States Supreme Court in *Mennonite Bd. of Missions v Adams* (462 US 791), although it is of passing interest that three Justices of the Supreme Court believed that the publication procedure

provided in the statute under consideration was constitutionally sufficient. For the reasons set forth in the comprehensive discussion of the issue in *Matter of Tax Foreclosure No. 35* (127 AD2d 220 [2d Dept 1987]), I am persuaded that this notice procedure is clearly constitutional. Indeed, except that a contrary view apparently was taken by the Fourth Department in *Matter of Foreclosure of Tax Liens by County of Erie (Manufacturers & Traders Trust Co.)* (103 AD2d 636), I should have thought the constitutionality of the section was free from any serious doubt.

It is surely appropriate for local governments, the discharge of whose essential governmental duties is dependent upon the prompt and orderly receipt of taxes on real estate, to provide by law a simple, convenient arrangement for notice whereby the appropriate agency may learn the identity of those with interest in the real property that would be affected by tax foreclosure proceedings, and provide notice to such persons. It simply cannot be constitutionally mandated that local governments may not undertake tax foreclosure proceedings to enforce real estate tax obligations without conducting title searches or resorting to the information set forth pursuant to recording statutes designed for entirely different purposes. Clearly, those who lend money secured by real property are aware that the security provided by the real property is dependent on the payment by owners of the real property of real estate taxes, and that they should inform themselves of the relevant statutory provisions. *(Cf., Sheehan v County of Suffolk, 67 NY2d 52, 58.)*

Once it is accepted that the notice procedure set forth in the Administrative Code is constitutional, I am unable to see how the joining of New York City in the mortgage foreclosure proceeding in this case has any relevant consequences, much less consequences of a constitutional dimension. The discussion in the court's memorandum opinion on this issue treats the situation as though the government of this city consisted of half a dozen people working in one office, each of whom knew everything known to everyone else. Even if this were the fact, it is doubtful that the mortgage foreclosure proceeding here would have any legal consequences relevant to the issues presented.

Ironically, in light of that which was to occur, the failure that gave rise to the mortgage foreclosure proceeding was a default in the payment of a sum of money for tax escrow. The City of New York was made a party defendant for the single purpose of barring it from any claim arising from any unpaid

corporation or any other franchise taxes that might be due. Nothing in the mortgage foreclosure proceeding purported, as indeed such a proceeding could not effectively do, to affect the right of New York City to enforce the city's lien on the property where real estate taxes had not been paid.

Since the corporation or franchise taxes identified in the pleadings were clearly subordinate to the rights of the mortgagee, the city had no interest whatever in the mortgage foreclosure proceeding and merely responded to it by someone filling out a printed form captioned "Notice of Appearance and Waiver in Foreclosure", signing it, and filing it in the action. No further action was taken by New York City in the mortgage foreclosure proceeding until the events giving rise to this appeal, and none was required.

The unstated assumption underlying the court's analysis is that whoever in the city responded in the usual way to the pro forma joining of the city in the mortgage foreclosure proceeding by filing a printed form should somehow have understood that the mortgagee, vigilant in protecting its interest from the threat presented by the failure to make a required tax escrow deposit, would itself refuse to pay the real estate taxes then due, would permit additional real estate taxes to accumulate over a period of years to the amount of $200,000, would view itself as having no obligation to pay real estate taxes until an in rem tax foreclosure proceeding was undertaken, and would not avail itself of the procedure clearly set forth in the Administrative Code for securing notice of the in rem tax foreclosure proceeding. This assumption, central to the determination in the court's opinion, seems to me unrealistic.

Assuming that there was some defect in the city's commencement of an in rem tax proceeding without informing the mortgagee in the still pending mortgage foreclosure proceeding, I fail to see how that defect can be considered of constitutional dimension once the constitutionality of the notice provisions of the Administrative Code is accepted. Accordingly, no conceivable issue could be raised by such a defect, if it were a defect, that would preclude giving effect according to its words of the two-year period of limitation set forth in section 11-412 (c) of the Administrative Code. That section provides in pertinent part that after two years from the date of recording of a tax deed the presumption of regularity in all aspects of the proceedings shall be conclusive.

Even if it were to be assumed that somehow the inclusion of the city in the mortgage foreclosure proceeding gave rise to an

issue of constitutionality in regard to the failure to give notice of the tax foreclosure proceeding to the mortgagee or its assignee, notwithstanding that the notice provision in the Administrative Code is otherwise constitutional, I still see no plausible reason why the mortgagee's claim should not be barred by the two-year period of limitations.

The decision of the United States Supreme Court in *Schroeder v City of New York* (371 US 208), relied upon in the court's memorandum opinion, provides little support for the conclusion reached therein. The *Schroeder* opinion found notice by publication inadequate to apprise a property owner of condemnation proceedings when the property owner's name and address were readily ascertainable from the deed record and tax rolls, and held that the applicable three-year period of limitations did not bar the owner from challenging the State's actions. Clearly, an owner of property is not normally required to anticipate that the property may be condemned, and to search the newspapers for possible notice of such an action.

The situation here could hardly be more different. We are confronted here with a mortgagee in possession, or its assignee, who well knew that real estate taxes were owing on the property which it now possessed, and which knew that real estate taxes were accumulating while it was awaiting an economically desirable time to sell the property, but which refused to pay the taxes that it knew were owing on the curious assumption that it was only obligated to pay once a tax foreclosure proceeding was undertaken, and which apparently also believed that it had no obligation to comply with the requirements of law with regard to informing the city of its interest in the property. I perceive nothing in the Supreme Court's decision in *Schroeder (supra),* nor in any other relevant authority, that would preclude giving appropriate effect to the explicit provisions of the two-year period of limitations. Indeed, in this case it is undisputed that the mortgagee, or its assignee, was aware prior to the expiration of the two-year period of limitations of the tax foreclosure proceeding and failed to undertaken any legal action prior to the expiration of the two-year period of limitations.

Accordingly, the order of the Supreme Court, Bronx County (Bertram Katz, J.), entered March 6, 1987, which granted a motion to reargue a prior motion of the City of New York, and upon reargument denied the city's motion to vacate plaintiff's judgment of mortgage foreclosure, to dismiss the complaint and vacate any notice of pendency by the plaintiff, should be reversed, and the city's motion to vacate the judgment of

mortgage foreclosure and sale, and the notice of pendency should be granted, and the complaint should be dismissed.