**Josephine WEIGNER,
Plaintiff–Appellant,**

v.

**The CITY OF NEW YORK,
Defendant–Appellee.**

**No. 570, Docket 87–7743.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 28, 1988.
Decided July 14, 1988.

Edward J. Ledogar, West Islip, N.Y., for plaintiff-appellant.

Ronnie Dane, New York City (Peter L. Zimroth, Corp. Counsel, Pamela Seider Dolgow, Angelo Aiosa, Susan M. Shapiro, New York City, on the brief), for defendant-appellee.

Before OAKES, NEWMAN, and MINER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Josephine Weigner appeals from a judgment of the District Court for the Eastern District of New York (Henry Bramwell, Judge) granting summary judgment against her in a diversity suit challenging the constitutional validity of tax lien foreclosure procedures of the City of New York. Weigner argues that the notice by first-class mail furnished pursuant to the City's Administrative Code was inadequate under the Due Process Clause of the Four-

teenth Amendment. She argues that, at a minimum, due process requires notice by certified mail, return receipt requested, to property owners who risk tax lien foreclosure of their interests in real estate. Additionally, Weigner contends that the City's notice of foreclosure was inadequate under state law and that the Board of Estimate improperly denied her application for a discretionary release of the City's interest in the property after the deed of foreclosure was entered. We conclude that notice sent by ordinary mail of the pendency of the tax lien foreclosure proceeding is all that the Constitution requires. We also reject Weigner's claims regarding the adequacy of notice under state law and the Board of Estimate's decision to deny a release.

## Background

Josephine Weigner is a resident of Florida. Between 1959 and 1962 she acquired a group of 14 vacant parcels of land in South Jamaica, Queens, New York. Weigner failed to pay property taxes on the lots beginning in 1977. On October 1, 1981, the City of New York commenced an *in rem* tax foreclosure action against all real property in Queens on which real estate taxes had not been paid for a year or more. Weigner's 14 lots were among the 5,229 parcels in this proceeding. At the time the action was commenced, Weigner owed approximately $31,000 in back taxes. The market value of the 14 lots is estimated by the parties to be between $151,000 and $250,000.

Pursuant to the City's Administrative Code, notices of the commencement of the tax foreclosure action were mailed to Weigner at her home in Florida. The City had Weigner's address because she had filed with the Commissioner of Finance an *"in rem* card," which enables the City to mail a notice to the designated address in the event that properties listed on the card are

included in an *in rem* tax foreclosure action. Administrative Code § 11–417 (Lenz & Riecher 1986). City records reveal that on October 1, 1981, notices of tax lien foreclosure were sent to Weigner by ordinary first class mail.[1] The parties dispute whether Weigner received these notices.[2]

The "Notice of Foreclosure" sent to Weigner was a form letter that apprised "[a]ll persons having or claiming to have an interest in the real property" described on a list of tax delinquent parcels, that a foreclosure action had been commenced against the parcels. The notice indicated that the property could be redeemed on or before December 18, 1981. The notice further stated that anyone who failed to redeem his property would be "forever barred and foreclosed" of any right in the property "except for the remedies provided in Sections D17–7.0(c) and D17–25.0 of the Administrative Code." Section D17–7.0(c) (now renumbered as section 11–407(c)) permits the late redemption of property after the redemption date, but prior to entry of a judgment of foreclosure. Section D17–25.0 (now renumbered as section 11–424) permits the "release" of the City's interest in property after entry of a judgment of foreclosure. An application for release must be made within two years from the date the City's deed of foreclosure is recorded. A release application made within four months of the City's deed, "shall be granted," provided that it is timely and the applicant pays all back taxes, penalties, and interest. Administrative Code § 11–424(f). An application made after four months and prior to two years is within the discretion of the Board of Estimate. Administrative Code § 11–424(g). *See generally Solomon v. City of New York*, 94 A.D.2d 283, 286–87, 464 N.Y.S.2d 160, 162 (1st Dep't 1983).

Weigner failed to redeem her property by the December 18, 1981, deadline, nor did she request a late redemption. On March

---

1. The notices were sent with respect to 13 of the 14 parcels owned by Weigner. The 14th parcel is a narrow strip of land, and Weigner has acknowledged that whatever ruling is made with respect to the 13 parcels for which notice was mailed should govern the 14th parcel.

2. The City presented evidence of its practices concerning the mailing of foreclosure notices. Weigner denies that she ever received legal papers, although she admitted receiving "tax bills and other form letters" concerning overdue taxes on her Queens property.

6, 1984, a judgment of foreclosure was entered in the action. The City took title to the properties pursuant to a deed recorded on March 15, 1984. That gave Weigner until July 15, 1984, to apply for a mandatory release and until March 15, 1986, to apply for a discretionary release. On March 12, 1986, just three days short of the two-year discretionary release deadline, Weigner filed release applications with respect to each of her 14 parcels. After informing Weigner that her case for a discretionary release was weak, giving her an opportunity to submit more evidence, and holding a hearing, the Board of Estimate denied her applications.

Weigner initiated the present suit on October 22, 1986. Her complaint alleged that she received inadequate notice of the foreclosure proceeding and that by denying her release applications the Board of Estimate discriminated against her as an out-of-state resident and otherwise abused its discretion. The District Court granted summary judgment for the City. 668 F.Supp. 135 (E.D.N.Y.1987). The Court found that due process was satisfied because Weigner actually received notices of foreclosure.[3] The District Court further concluded that Weigner's equal protection claim lacked a factual basis and that the Board of Estimate had not abused its wide discretion under state law in denying her release applications.

## Discussion

### A. *Notice*

Weigner contends that summary judgment was improper because there is a disputed issue of material fact as to whether she received the notices of foreclosure that were sent to her. Though Weigner conceded in an affidavit that she received "some tax bills and other form letters from the City of New York" regarding the delinquent parcels, she denied receiving "proper notice" and now claims that she never received the notices of foreclosure. She argues that this is an issue of material fact because the notice provided by the Administrative Code was constitutionally insufficient unless received. Her claim raises the issue whether due process requires that notice of a tax lien foreclosure must not only be mailed to a property owner but also must be received.

Generally, when litigation is initiated to deprive individuals of their property, due process is satisfied by "notice *reasonably calculated,* under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (emphasis added); *accord Mennonite Board of Missions v. Adams,* 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983). The proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice. As long as the state employs means "such as one desirous of actually informing the [property owner] might reasonably adopt to accomplish [that purpose]," then it has discharged its burden. *Mullane, supra,* 339 U.S. at 315, 70 S.Ct. at 657. "The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected ...." *Id.* Importantly, the state's obligation to use notice "reasonably certain to inform those affected" does not mean that all risk of non-receipt must be eliminated: " 'Now and then an extraordinary case may turn up,

---

**3.** The District Court's finding that notices were received was limited to the 13 parcels as to which notices had been sent. *See* footnote 1, *supra.* With respect to the 14th parcel, for which notice was not sent, the District Court ruled that Weigner's claim was barred by the two-year statute of limitations. *See* Administrative Code § 11–412(c). Because we hold that due process was satisfied with respect to the 13 parcels for which notices were sent and because

Weigner has agreed that the disposition with regard to the 13 parcels should govern the 14th parcel, we need not consider the statute of limitations issue. *See Schroeder v. City of New York,* 371 U.S. 208, 213–14, 83 S.Ct. 279, 282–83, 9 L.Ed.2d 255 (1962); *Alliance Property Management and Development, Inc. v. Andrews Avenue Equities, Inc.,* 133 A.D.2d 30, 518 N.Y.S.2d 804 (1st Dep't 1987).

but constitutional law like other mortal contrivances has to take some chances, and in the great majority of instances no doubt justice will be done.' " *Id.* at 319, 70 S.Ct. at 660 (quoting *Blinn v. Nelson,* 222 U.S. 1, 7, 32 S.Ct. 1, 2, 56 L.Ed. 65 (1911)); *see Schroeder v. City of New York,* 371 U.S. 208, 214, 83 S.Ct. 279, 283, 9 L.Ed.2d 255 (1962).

The Supreme Court has frequently said and just recently restated that, under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy. *Tulsa Professional Collection Services, Inc. v. Pope,* —— U.S. ——, ——, 108 S.Ct. 1340, 1343, 99 L.Ed.2d 565 (1988); *Mennonite Board of Missions v. Adams, supra,* 462 U.S. at 800, 103 S.Ct. at 2712; *Mullane, supra,* 339 U.S. at 319, 70 S.Ct. at 659. The mails are an "efficient and inexpensive means of communication" that generally may be relied upon to deliver notice where it is sent. *Mullane, supra,* 339 U.S. at 319, 70 S.Ct. at 660. In the context of a wide variety of proceedings that threaten to deprive individuals of their property interests, the Supreme Court has consistently held that mailed notice satisfies the requirements of due process. *See, e.g., Tulsa Professional Collection Services, Inc. v. Pope, supra,* —— U.S. at ——, 108 S.Ct. at 1345 (notice to creditors in probate proceedings); *Mennonite Board of Missions v. Adams, supra,* 462 U.S. at 799–800, 103 S.Ct. at 2711–12 (notice to mortgagee of tax foreclosure); *Greene v. Lindsey,* 456 U.S. 444, 455, 102 S.Ct. 1874, 1880, 72 L.Ed.2d 249 (1982) (notice to public housing tenants of forcible entry and detainer actions); *Schroeder v. City of New York,* 371 U.S. 208, 214, 83 S.Ct. 279, 283, 9 L.Ed.2d 255 (1962) (notice of condemnation proceeding); *Walker v. City of Hutchin-*

son, 352 U.S. 112, 116, 77 S.Ct. 200, 203, 1 L.Ed.2d 178 (1956) (notice of condemnation proceeding); *Mullane, supra,* 339 U.S. at 319, 70 S.Ct. at 659 (notice to trust beneficiaries of judicial settlement of trust accounts). Though the mails are not one hundred percent reliable, none of these cases requires actual receipt of notice that is properly mailed. *See, e.g., Schroeder v. City of New York, supra,* 371 U.S. at 214, 83 S.Ct. at 283 (City's duty to notify property owner of condemnation proceeding was "an obligation which the *mailing* of a single letter would have discharged") (emphasis added).[4]

Weigner contends that she was constitutionally entitled to notice by certified mail, return receipt requested. No doubt that form of notice would have advantages. The signed receipt would provide virtually conclusive evidence that the notice was received, thereby permitting proof of receipt, if thought to be constitutionally required, to be established on a more substantial basis than simply weighing the inferences from mailing against the property owner's denial. Moreover, the delivery and request for signature of a return receipt would alert the property owner to the fact that the letter contains something of more than routine interest. Indeed, a substantial argument could be made for using such notice for a variety of important items now sent by ordinary first-class mail, for example, the notice from a district court of entry of a judgment, *see* Fed.R.Civ.P. 77(d) (authorizing mailed notice and specifying that lack of notice does not warrant relief from failure to appeal).

■ However, in deciding what the Constitution requires, we are not free to select forms of notice simply because they are advantageous. Even if beneficial, means of notice beyond those reasonably calculat-

---

4. In some special circumstances, mailed notice may be inadequate. For example, where the state knows that an interested party does not reside at the mailing address, *Robinson v. Hanrahan,* 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972); *Sterling v. Environmental Control Board,* 793 F.2d 52, 57 (2d Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986), or where the recipient is known to be someone who could not understand mailed notice, *Covey*

*v. Town of Somers,* 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956), then due process may require more than sending a letter to the address on file. No such special circumstances exist in the present case. The address to which New York City sent the notices was Weigner's home address, which she herself provided in her *in rem* card. Nor is there any suggestion that Weigner was unable to appreciate the significance of the letters that the City sent.

ed to reach interested parties are not required by due process in the context of foreclosures. *Mullane, supra,* 339 U.S. at 313–14, 317–18, 70 S.Ct. at 656–57, 658–59. The Supreme Court has repeatedly held that notice by first-class mail is sufficient, notwithstanding the Court's obvious awareness that not every first-class letter is received by the addressee. *See, e.g., id.* at 319, 70 S.Ct. at 659. Particularly where mailing is supplemented by other forms of notice such as posting or publication, the risk of non-receipt is constitutionally acceptable. Thus, a landowner's opportunity to learn of condemnation proceedings through notices posted on the land or published in a newspaper circulated in the area in which the land is located, *see Schroeder v. City of New York, supra,* 371 U.S. at 209, 83 S.Ct. at 280, or a creditor's opportunity to learn of his debtor's death by notice published by a probate court in the area of the debtor's residence, *see Tulsa Professional Collection Services, Inc. v. Pope, supra,* 108 S.Ct. at 1342, reduces the chances that property owners who fail to receive mailed notice will be taken completely by surprise.

■ In the circumstances of the pending case, the small risk that the notice sent by first-class mail would not arrive is acceptable for two reasons. First, the mailing was not the only device relied upon to give notice. The City published foreclosure notices once a week for six successive weeks in the City Record and in two newspapers circulated throughout Queens County. *See* Administrative Code § 11–406(a). Addi-

tionally, notices of foreclosure were posted in the Queens County courthouse and in three other conspicuous locations in the Borough of Queens. *See* Administrative Code § 11–406(d). The mailing was thus a supplemental form of notice, albeit a necessary one, to the form of notice relied on·in an earlier day as the exclusive form of notice. *See Ballard v. Hunter,* 204 U.S. 241, 254–55, 27 S.Ct. 261, 265–66, 51 L.Ed. 461 (1907); *Huling v. Kaw Valley Railway & Improvement Co.,* 130 U.S. 559, 563–64, 9 S.Ct. 603, 605–06, 32 L.Ed. 1045 (1889). A second reason for tolerating the risk of non-receipt of first-class mail in this case is Weigner's own conduct in failing to pay taxes. The well-known inevitability of taxes and the consequences of not paying them are themselves likely to alert a tax delinquent property owner to the possibility of foreclosure. The proceeding in this case was initiated against parcels of real property that had been tax delinquent for over a year. Weigner had failed to pay property taxes for over four years and concedes receiving tax bills and other letters from the City apprising her of her delinquency. A person in Weigner's position can reasonably be expected to know that foreclosure is imminent and to take the steps necessary to protect her interests.[5] Under these circumstances, notice by ordinary mail supplemented by publication and posting was reasonably calculated to inform the parties affected. Due process does not require that notice sent by first-class mail be proven to have been received.[6]

---

5. We do not mean to suggest that a party's ability to take steps to safeguard his interests relieves the state of its constitutional obligation to use notice reasonably calculated to inform interested parties. *See Mennonite Board of Missions v. Adams, supra,* 462 U.S. at 799, 103 S.Ct. at 2711. However, in making the initial determination of what notice is reasonable, the likelihood that a party will learn of the proceedings without notice from the state and his ability to protect himself are relevant circumstances. *See Bender v. City of Rochester,* 765 F.2d 7, 11 (2d Cir.1985).

6. Weigner's insistence that a recent decision of the New York Court of Appeals, *McCann v. Scaduto,* 71 N.Y.2d 164, 524 N.Y.S.2d 398, 519 N.E.2d 309 (1987), imposes a constitutional re-

quirement of certified mailing, is based on a misreading of that case. In *McCann,* the Court of Appeals held that Nassau County's tax foreclosure procedures violated due process. The County's Administrative Code provided for notice to property owners of a tax lien sale by publication only. After the sale, the purchaser of the tax lien was required to inform the property owner of his redemption rights by certified mail, return receipt requested. The Court of Appeals held that this scheme violated due process because the initial tax sale was a substantial deprivation of property that required mailed or "actual" notice as opposed to published or "constructive" notice to persons whose addresses were known. *Id.* 71 N.Y.2d at 177, 524 N.Y.S.2d at 403–04, 519 N.E.2d at 313–15 (citing *Mennonite Board of Missions v. Adams, supra* ).

Weigner further argues that the notice provided by the Administrative Code was constitutionally insufficient because she was never informed of entry of the foreclosure judgment or of the imminent lapse of her remedies of mandatory and discretionary release. However, due process only requires notice of "the pendency of the action" and an opportunity to respond. *Mullane, supra*, 339 U.S. at 314, 70 S.Ct. at 657; *Mennonite Board of Missions v. Adams, supra*, 462 U.S. at 795, 103 S.Ct. at 2709; *see Greene v. Lindsey, supra*, 456 U.S. at 451, 102 S.Ct. at 1878. The City discharged its burden by sending notice that was reasonably calculated to inform interested parties that the foreclosure action had been initiated and to apprise them of the availability of the redemption and release remedies. Once the City sent this notice, it was not required to send additional notices as each step in the foreclosure proceeding was completed or when each of the available remedies was about to lapse. *See Calhoun v. Jennings*, 512 N.E.2d 178, 184 (Ind.1987); *cf. United States v. Locke*, 471 U.S. 84, 108–10, 105 S.Ct. 1785, 1799–1800, 85 L.Ed.2d 64 (1985); *Texaco, Inc. v. Short*, 454 U.S. 516, 536, 102 S.Ct. 781, 796, 70 L.Ed.2d 738 (1982).

Even if Weigner did not actually receive the initial notices of foreclosure, the City's failure to send additional notice of the release periods was not constitutionally deficient. By the time the mandatory release period lapsed in July 1984, Weigner had failed to pay taxes on her property for over seven years. When the discretionary release period lapsed in March 1986, she had been tax delinquent for almost ten years. Weigner concedes she was aware of her delinquency by virtue of tax bills and other letters the City sent. She should have realized that her failure to pay taxes for such a long period of time would result in a foreclosure, and she could easily have contacted the City at any time to determine the status of her property and to take steps to protect it. In short, the likelihood of the City proceeding against Weigner's property was so certain from the circumstances of her tax delinquency that additional written notice of deadlines to avoid foreclosure was unnecessary. In an analogous context, this Court has held that the failure of the court clerk to mail notice to litigants of the filing of an order in the district court does not relieve a party from complying with deadlines running from the filing of such an order because a party to litigation ought to anticipate the filing of such orders. *See Wakefield v. Northern Telecom, Inc.*, 813 F.2d 535, 541–42 (2d Cir.1987) (time to file bill of costs); Fed.R.Civ.P. 77(d) (time to file notice of appeal).

In addition to her constitutional claim, Weigner contends that the notice provided by the City was inadequate under state law. Specifically, Weigner asserts that she should have been furnished with a summons and complaint as provided for in the New York Civil Practice Law and Rules ("CPLR") and with other notices as provided for in the New York Real Property Tax Law. Weigner's claims are without merit because, in tax matters, local ordinances such as the Administrative Code take precedence over the CPLR and the Real Property Tax Law:

> The rule of construction of tax statutes has been entrenched that city charter provisions describing form and procedure should be preferred to the general provisions of the tax laws; only when the city charter is silent as to form and procedure is resort to be made to the general tax laws; and when both the city charter and State tax laws are silent, the provisions of the CPLR or comparable practice statutes may then be applied.

*Stevens Medical Arts Building v. City of Mount Vernon*, 72 A.D.2d 177, 181–82, 424 N.Y.S.2d 230, 233 (2d Dep't 1980); *see McCann v. Scaduto*, 71 N.Y.2d 164, 171 n. 2, 524 N.Y.S.2d 398, 400 n. 2, 519 N.E.2d 309, 311 n. 2 (1987); *People ex rel. Savory,*

---

The opinion is crystal clear that "actual" notice means notice sent to the recipient, as opposed to published notice. *Id.* 71 N.Y.2d at 174, 524 N.Y.S.2d at 402, 519 N.E.2d at 312. Nowhere does the opinion suggest that "actual" notice means notice that is in fact delivered, much less notice by certified mail, return receipt requested. Weigner's attempt to construe *McCann* as an expansion of the *Mullane* and *Mennonite* cases on which *McCann* relies is unavailing.

*Inc. v. Plunkett,* 295 N.Y. 180, 182–83, 66 N.E.2d 46 (1946); N.Y. Real Prop. Tax Law § 2006 (McKinney Supp.1988). Since the Administrative Code contains specific provisions regarding notice of tax foreclosure proceedings, the Real Property Tax Law and the CPLR do not apply. *See McCann v. Scaduto, supra,* 71 N.Y.2d at 171 n. 2, 524 N.Y.S.2d at 400 n. 2, 519 N.E.2d at 311 n. 2 (declining to supplement local tax sale notice provisions with requirements of Real Property Tax Law and CPLR).

### B. *Denial of Release*

Weigner contends that the Board of Estimate's denial of her release application was improper. Primarily, she argues that the denial was unlawful because other applicants "less worthy" than she were granted releases. She also alleges that the Board discriminated against her as an out-of-state resident, and she even suggests that the Board denied her application because she refused to pay bribes. We agree with the District Court that these contentions are without merit.

The Board of Estimate has virtually unlimited discretion under Administrative Code § 11–424(g) (formerly section D17–25.0(g)) whether to grant a release application such as Weigner's that is filed after the four-month mandatory release period has expired. *Solomon v. City of New York, supra,* 94 A.D.2d at 286–87, 464 N.Y.S.2d at 162; *Sixteen Eighty West 7th Corp. v. Board of Estimate,* 109 A.D.2d 799, 800, 486 N.Y.S.2d 311, 312 (2d Dep't 1985); *see Dwyer v. Lindsay,* 23 N.Y.2d 562, 564–65, 297 N.Y.S.2d 942, 943–44, 245 N.E.2d 708, 709 (1969). In considering the application, the Board may look at the length of the underlying tax delinquency, the amount of unpaid taxes, and the reasons for nonpayment. *See Dwyer v. Lindsay, supra,* 23 N.Y.2d at 565, 297 N.Y.S.2d at 944, 245 N.E.2d at 709; *Solomon v. City of New York, supra,* 94 A.D.2d at 286–87, 464 N.Y.S.2d at 162. Moreover, the Board is prohibited from releasing the property if the City has sold it, the property has been condemned or assigned to a City agency, or the property is the subject of contemplated use for any capital or urban renewal

project. Administrative Code § 11–424(g). The Board need not give reasons for its ultimate decision. *Solomon v. City of New York, supra,* 94 A.D.2d at 287, 464 N.Y.S. 2d at 162.

The Board acted within its discretion in denying Weigner's application. At the time of the Board's consideration, the property had been tax delinquent for over nine years, and Weigner had no explanation as to why she had failed to pay other than that payment had become "financially inexpedient." Moreover, Weigner did not occupy the property, nor did she have any plans to develop it in a useful way. Finally, the City was considering using the land for a housing program. Under these circumstances, the Board was fully justified in denying the release.

We reject Weigner's remaining claims for substantially the reasons set forth in the District Court's opinion. The Board was entitled to consider the fact that Weigner was an absentee landowner, and there is no evidence that the Board discriminated against her because she was an out-of-state resident as opposed to an absentee owner who lived within the state. Similarly, Weigner's claim that her release application was denied for failure to pay bribes or for other improper motives is wholly unsupported in the record.

The decision of the District Court granting summary judgment to the City of New York is affirmed.

OAKES, Circuit Judge (dissenting):

I dissent.

I believe that the procedures followed by New York City in conducting tax foreclosure sales are constitutionally invalid for two reasons. First, the City's Administrative Code does not give a landowner sufficient notice of foreclosure proceedings. Second, the "release" provisions, which place the approval of certain applications wholly within the "discretion" of the Board of Estimate, are totally arbitrary. Here both deprived Weigner of procedural due process and of equal protection of the laws.

The City provides service of a "Notice of Foreclosure" by ordinary first class mail. N.Y.C.Admin.Code § 11–417 (Lenz & Reicher 1985). With all the vagaries of the postal service in the 1980s, the notice provided to out-of-state New York City property owners whose property is the subject of foreclosure proceedings is less reliable than that provided to out-of-state property owners in a wide variety of other circumstances. So, for example, a nonresident whose real estate is sold to pay a judgment debt, N.Y.Civ.Prac.Law § 5236(c) (McKinney 1978 & Supp.1988), or one on whose personal property execution is levied to pay a money judgment, *id.* §§ 5225, 5232, or a person who owes money or who will owe money to a judgment debtor and is served with a restraining notice, *id.* §§ 5222, 5227, or a judgment debtor on whom is served an information subpoena, *id.* § 5224, is guaranteed service personally or by registered or certified mail, return receipt requested. I fail to see why tax foreclosure matters should be treated differently.

Recently the New York Court of Appeals considered a somewhat similar question in *McCann v. Scaduto*, 71 N.Y.2d 164, 524 N.Y.S.2d 398, 519 N.E.2d 309 (1987). There the court found unconstitutional the Nassau County tax foreclosure system, which provided notice of the tax sale itself only by publication and had no requirement for actual notice until three months before the redemption period expired. In a compelling opinion by Judge Kaye, the court concluded that the tax lien sale "creates 'momentous consequences' for the homeowner," and that "[a]ctual notice" of it is required. *Id.* at 177, 524 N.Y.S.2d at 404, 519 N.E.2d at 314–15. Judge Kaye's opin-

ion did not specify that "actual" notice need be by registered or certified mail; however, in light of both the evolving due process standards for adequacy of notice and the practical realities of being a postal patron in the late 1980s, I would take the further step of requiring that actual notice consist of personal service, registered or certified mail, or, at a minimum, of service by first class mail with a return envelope, postage prepaid and addressed to the sender, as specified in Fed.R.Civ.P. 4(c)(2)(C)(ii) & 4(d).[1] Although the Supreme Court has yet to be squarely presented with the question whether certified or registered mail, as opposed to first class mail, is required to constitute actual notice, I think that a discernible trend toward this position, coupled with the Court's recognition of property rights as personal rights, *e.g., Lynch v. Household Finance Corp.*, 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424 (1972), make its adoption a matter only of time.

Judge Kaye's opinion in *McCann* ably recounts that trend. Starting with *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court rejected any rigid distinctions between in rem and in personam proceedings, *id.* at 312–13, 70 S.Ct. at 656–57, and articulated that "[a]n elementary and fundamental requirement of due process ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *id.* at 314, 70 S.Ct. at 657, and that "[t]he means employed must be such as one desirous of actually informing the absentee might rea-

---

**1.** Significantly, the Advisory Committee and the Supreme Court had approved of an amendment that would permit service referred to in Rules 4(d)(1) and 4(d)(3) by registered or certified mail, return receipt requested, and Congress instead adopted the substitute found in the Rule. *See* 4A C. Wright & A. Miller, *Federal Practice and Procedure* § 1092.1, at 56 (1987). Although "in the usual situation [in class action suits] first-class mail and publication in the press fully satisfy the notice requirements of Fed.R.Civ.P. 23 and the due process clause," *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir.), *cert. denied,* 474

U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985), notice by certified mail may be preferable where the intended recipient lacks legal expertise. For example, one court which found that notice by first class mail in a class action suit was "'reasonably calculated ... to apprise interested parties'" where the class consisted of business entities with legal expertise also recognized that "[m]ore elaborate steps, such as certified mail, [may be appropriate] ... where class members may be presumed to be less aware of a notice's legal ramifications." *Id.* at 92 (quoting *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657).

sonably adopt to accomplish it." *Id.* at 315, 70 S.Ct. at 657. In following years the Court held that constructive notice of condemnation proceedings was inadequate to notify a landowner whose identity was known to the city, *Walker v. City of Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (publication *and* posting insufficient notice of condemnation proceedings to landowner ascertainable from public records), and that the posting of a summons on an apartment door was insufficient notice of a forcible entry or detainer action, *Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). In *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Court held that posting in county courthouse and publication does not provide a mortgagee adequate notice of a proceeding to sell the mortgaged property for nonpayment of taxes. Through this progression, the Court has come to recognize as a general principle that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite,* 462 U.S. at 800, 103 S.Ct. at 2712. (Here Weigner's name and address were known to the City, she having completed an *"in rem* card.") The Court went on to say, "a mortgagee's [and presumably a mortgagor's] knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending." *Id.* Thus, for purposes of notice, a delinquent real estate taxpayer stands in no different shoes from a judgment debtor. The trend continues. In *Tulsa Professional Collection Services, Inc. v. Pope,* — U.S. —, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), the Court required the service of actual notice in probate proceedings.

Several lower courts have acknowledged that certified or registered mail is preferable to first class mail as a means of notice because the certified or registered mail, if signed for, guarantees receipt, *see Stateside Mach. Co. v. Alperin,* 591 F.2d 234, 241 (3d Cir.1979), *superseded by statute as explained in Gold Kist, Inc. v. Laurinburg Oil Co.,* 756 F.2d 14, 17–18 (3d Cir. 1985) (state rules now require service of process by certified or registered mail), and provides documentary evidence of receipt. *United States v. Smith,* 398 F.2d 173, 177 (3d Cir.1968). In recognition of these advantages, registered or certified mail is now the preferable means for notice in a variety of contexts, not only in New York. For example, several states require notice by registered or certified mail before tax foreclosure, e.g., Wash.Rev.Code § 84.64.050 (1987), or mortgage foreclosure, e.g., D.C.Code §§ 45–715(b), 45–715.1; *see also* 12 C.F.R. § 590.4(h)(1) (1985) (Federal Home Loan Bank Board requires thirty days' notice prior to foreclosure to be sent by registered or certified mail). Similarly, mortgage agreements frequently specify notice by certified mail prior to foreclosure. *E.g., United States v. Victory Highway Village, Inc.,* 662 F.2d 488, 493 (8th Cir.1981).

The facts of this case show why notice by certified or registered mail is necessary. Here the parties dispute whether the notice was ever received. Weigner, a widow living in Florida, owned property in a run-down section of Queens. She had paid her taxes up to 1977 (and 1980 as to one parcel) except for a brief period when she held the property as mortgagee, having sold it to an unsuccessful developer, and even then she paid back taxes when she reacquired it from the buyer. Actual arrearages were only $9,259, although $21,927 in interest, subsequent taxes, penalties, etc., was owed on the property which was worth, in the 1980s, $183,000 according to the City and more than $250,000 according to Weigner. The notice (which she does not remember receiving) was a form letter on which her name does not appear, her pieces of property are not specified, and the word "summons" is conspicuously absent. The form "notice of foreclosure" simply refers to "In Rem Tax Foreclosure Action No. 38" in the Borough of Queens and says that the Com-

missioner of Finance has filed with the clerk of a court "a list of parcels of property affected by unpaid tax liens ... which on the 1st day of October, 1981, had been unpaid for a period of at least one year" and went on to specify, in writing-like typeface, December 18, 1981, as the last day for redemption. Queens Action No. 38 involved, I note, 5,229 tax delinquent parcels.

In our current society, when our mailboxes are usually full of quite sophisticated, and often personalized, "junk mail," it is not unlikely that the form letters sent by the City were simply thrown away by Weigner. Similarly, the fact that she allegedly received thirteen such notices might have led her to disregard all of them because there were so many. More importantly, had she opened the letters and worked her way through the somewhat abstruse and tortured legalese, she might not have realized that it was in fact a summons that she had received. (I note that had she been the out-of-state recipient of a summons announcing the start of a legal action, she would have been entitled to *personal* service. N.Y.Civ.Prac.Law §§ 313, 314 (McKinney 1972 & Supp.1988).) It is not unreasonable for an individual to expect that an important legal document will include his or her name and will describe with some particularity the subject of the dispute. To my mind the notices simply did not constitute, in the words of *Mullane,* a means "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 315, 70 S.Ct. at 657. Rather, the City appears to have been trying to satisfy some perceived minimum standard rather than making a good faith effort to provide actual notice. Moreover, the City did *not* send *any* notice of the entry of the foreclosure judgment, any notice of the recording of the tax foreclosure deed, or any notice of the pending expiration of Weigner's rights to redeem within the four-month mandatory release period thereafter. This dissenting opinion may be a little in advance of its time but, I suggest,

very little. Indeed, it has been anticipated by *Miles v. District of Columbia,* 354 F.Supp. 577, 583–85 (D.D.C.1973), *aff'd,* 510 F.2d 188 (D.C.Cir.1975). *See also* Kirst, *Nebraska's Modern Service of Process Statute,* 63 Neb.L.Rev. 1, 6 (1983).

The other basis for unconstitutionality of the city foreclosure procedures is more direct. New York City Administrative Code section 11–424(g) permits the Board of Estimate in its "discretion" to authorize the "release" of the City's interest in the property foreclosed to the taxpayer who properly applies and pays all due charges during the period from four months to twenty-four months after the deed of foreclosure is recorded. (For the first four months there is a mandatory release.) The only restraint on this discretion is that it cannot be exercised if the City has sold or disposed of the property, if the property has been condemned or assigned to any agency of the City, or if it is the "subject of contemplated use for any capital or urban renewal project of the city." Weigner duly filed her applications for release but, according to the City's affidavit in support of its motion for summary judgment, she was turned down because the vacant land was "on disposition hold" because it was submitted to the Mayor's office as "potential Affordable House Sites" and because she lacked any plans for the sites.

To my mind, despite the City's admirable goal of using the foreclosed land for affordable housing, the untrammeled discretion of the Board makes the City's action arbitrary. To be sure, it can be argued that the period for the "release" application could be shortened, for example, to four months, and that would eliminate the problem of arbitrariness. But I rather thought the right-privilege distinction had been interred,[2] or at the very least that when government agencies take actions affecting valuable property rights there must be standards for the exercise of administrative discretion. Judge Henry Friendly spoke of the need for such standards as

---

2. *See* Van Alstyne, *The Demise of the Right–Privilege Distinction in Constitutional Law,* 81 Harv.  L.Rev. 1439 (1968).

early as 1962 in *The Federal Administration Agencies: The Need for Better Definition of Standards* 5–6 (1962), *selected chapters reprinted in Benchmarks* 86–134 (1967). Professor Kenneth Culp Davis devotes a chapter in his 2 *Administrative Law Treatise* ch. 8 (2d ed. 1979) to the subject. Case law in the Supreme Court, *Morton v. Ruiz,* 415 U.S. 199, 231, 232, 236, 94 S.Ct. 1055, 1072, 1073, 1075, 39 L.Ed.2d 270 (1974) (determination of eligibility for welfare benefits), and in this court, *Holmes v. New York City Hous. Auth.,* 398 F.2d 262, 265 (2d Cir.1968) (selections among applicants for public housing); *McClendon v. Rosetti,* 460 F.2d 111 (2d Cir.1972) (disposition of property in police custody), requires that decisions be made according to articulated standards, not by unfettered administrative discretion. *See also White v. Roughton,* 530 F.2d 750, 753–54 (7th Cir. 1976) ("vesting virtually unfettered discretion in [Town Supervisor]" with no "published standards for eligibility or the amount of aid given," *id.* at 751).

Here, I believe that the actions of the Board were arbitrary. The lack of standards, coupled with the fact that the Board is not required to give its reasons for its ultimate decision, creates a situation where an applicant must guess at the arguments to be made to the Board, and will often never know why an application has been accepted or denied. Weigner's complaint made out a colorable claim of arbitrariness, and she should have been allowed discovery on the question of whose applications were approved and whose were not. The practical result of this case is that the City of New York, through suspect procedures and arbitrary administrative actions, has gained possession of property worth between $183,000 and $250,000, because an elderly out-of-state widow failed timely to pay less than $10,000 in property taxes. Because the City has failed to live up to its constitutionally-mandated duties, I dissent.