07-1625-cv (L)
*Miner v. Clinton County*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: May 22, 2008                                     Decided: September 5, 2008)

Docket Nos. 07-1625-cv (L); 07-2461-cv (CON)

VALERIE MINER, DAVID MINER, ALEXANDER TUPAZ, AND LOURDES TUPAZ,

    *Plaintiffs-Appellants*,

    v.

CLINTON COUNTY, NEW YORK, AND JANET DUPREY, IN HER INDIVIDUAL CAPACITY
AND IN HER OFFICIAL CAPACITY AS CLINTON COUNTY TREASURER,

    *Defendants-Appellees*.

Before: CABRANES, KATZMANN, and B.D. PARKER, *Circuit Judges*.

Plaintiffs in two cases consolidated on appeal filed suit in the United States District Court for the Northern District of New York (Thomas J. McAvoy and Gary L. Sharpe, *Judges*), alleging violations of their rights to due process and equal protection of the laws stemming from Clinton County's foreclosure of their properties as a result of unpaid property taxes. In both cases, the District Court granted summary judgment for defendants. We hold that (1) due process does not require actual notice of foreclosure, *see Jones v. Flowers*, 547 U.S. 220, 226 (2006), that defendants' actions were reasonably calculated under the circumstances to provide notice of foreclosure, and that plaintiffs were not entitled to additional notice of default judgment where the previous notice of foreclosure met the requirements of due process. (2) We also agree with the District Court that defendants did not violate plaintiffs' rights to due process and equal protection of the laws by refusing to accept redemption after

1

default judgment was entered or refusing to grant plaintiffs a share in the surplus from a tax sale. (3) We find no merit in plaintiffs' claim that reasonable restrictions on the method of payment of long-overdue taxes—such as requiring payment by cash, money order, or certified check—violate due process.

Affirmed.

MARK SCHNEIDER, Plattsburgh, NY, *for plaintiffs-appellants*.

ROBERT A. RAUSCH, Maynard, O'Connor, Smith & Catalinotto, LLP, Albany, NY, *for defendants-appellees*.

JOSÉ A. CABRANES, *Circuit Judge*:

In two actions brought under 42 U.S.C. § 1983, plaintiffs Alexander and Lourdes Tupaz and Valerie and David Miner allege violations of their rights to due process and equal protection of the laws as a result of Clinton County's enforcement of various foreclosure provisions of New York's Real Property Tax Law. We consolidated their cases on appeal from the United States District Court for the Northern District of New York (Thomas J. McAvoy and Gary L. Sharpe, *Judges*) due to overlapping claims against the same defendants and now affirm the District Court's entries of judgment in favor of the defendants on all claims.

As explained in greater detail below, plaintiffs do not have a due process right to actual notice of foreclosure. They are entitled to notice that is reasonably calculated under the circumstances to reach the intended recipients, alert them to a pending foreclosure, and advise them of an opportunity to be heard. Clinton County did not violate plaintiffs' right to due process where, as here, the County sent a notice of foreclosure by certified mail and reasonably believed that the notice had been delivered. Plaintiffs were not entitled to additional notice of default judgment, to an additional opportunity to redeem their property after foreclosure, or to a share of any profits from a tax sale for the same reason: Clinton County provided plaintiffs with the process they were due by sending a notice of foreclosure

2

that "was reasonably calculated to reach the intended recipient when sent." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). We also find no violation of the right to equal protection of the laws in the County's refusal to permit taxpayers to redeem their property by paying the back-taxes after default judgment has been entered or its refusal to grant plaintiffs a share of any surplus from a tax sale because plaintiffs have not submitted evidence showing adverse treatment on an impermissible basis compared with persons who were similarly situated. Finally, we conclude that the County's requirement that long-overdue tax payments be submitted in the form of cash, money order, or certified check does not violate due process.

## BACKGROUND

Unless otherwise stated, the following facts are not disputed.

**The Tupazes**

The Tupazes purchased two undeveloped properties in the Town of Plattsburgh, Clinton County, New York, in 1987. Since that time, these properties have been the subject of three tax foreclosure proceedings. The instant dispute arises from the alleged failure of defendants Clinton County and Janet Duprey, the Clinton County Treasurer, to give adequate notice of the foreclosure associated with unpaid property taxes from 2002.

Between May 2002 and February 2003, defendants sent five letters by first class mail to the Tupazes notifying them of their overdue taxes. *See Tupaz v. Clinton County*, 499 F. Supp. 2d 182, 184 (N.D.N.Y. 2007). The final letter, sent on February 11, 2003, warned the Tupazes that if their 2002 taxes were not paid by October 10, 2003, the County would initiate foreclosure proceedings. Each of the letters was addressed to the Tupazes at their home in Staten Island, New York—the address that appeared on record in the county tax rolls and where defendants had sent previous notices of foreclosure. *Id.* None of the letters were returned as undeliverable. *Id.* The Tupazes contend that

3

they never received these letters, although they acknowledge that the County's record of their home address was correct.

Having received no response from the Tupazes, in October 2003, defendants included the Tupazes in a list of all delinquent taxpayers to whom they sent a Notice and Petition of Foreclosure (the "Notice" or "Notice of Foreclosure"), indicating that the final date for redemption of the property by paying the overdue taxes was January 16, 2004. *Id.* The Notice was sent to the Tupazes' Staten Island address via certified mail.[1] *Id.* Defendants subsequently received a delivery receipt for the Notice of Foreclosure, indicating that the letter was delivered on October 16. The delivery receipt did not contain a legible signature from the recipient indicating who received the package. Instead, the "Signature" box had a line drawn within it and did not otherwise contain a readily identifiable signature. In addition to the Notice, defendants published notice in two Clinton County newspapers pursuant to New York Real Property Tax Law § 1124. *Id.*

While the parties dispute whether the Tupazes received the Notice, there is no dispute that defendants believed that it had been delivered. *See id.* at 185. Defendant Janet Duprey, the Clinton County Treasurer, attested that upon receiving the receipt, she presumed that "the mailing ha[d] indeed been delivered and received." *Id.* (quoting Affidavit of Janet L. Duprey ("Duprey Affidavit") ¶ 14). Duprey further "assumed that the plaintiffs had indeed received the Notice" because they "had received numerous prior letters and warnings" at the same address. (Duprey Affidavit ¶ 22.) She testified that, pursuant to standard practice for confirming illegible signatures, the County Treasurer's office confirmed, by checking the United States Postal Service website, that the Notice was delivered

---

[1] For the relevant time period , New York law required that only one notice be sent by certified mail. *See* N.Y. Real Prop. Tax Law § 1125 (2005). The statute was subsequently amended to require that *two* notices of foreclosure be sent, either by certified mail and first class mail or both by certified mail. *See* N.Y. Real Prop. Tax Law § 1125 (1)(b) and (5) (2008).

on October 16, 2003 within the zip code applicable to the Tupazes' residence.[2]  After comparing the "signature" on the October 16 delivery receipt to previous delivery receipts for notices of foreclosure that had been sent to the Tupazes' Staten Island address, she concluded that previous notices had been accepted with equally indecipherable markings.  According to Duprey, it was "not at all unusual to receive a certified mail receipt with an illegible signature or simply a mark in the signature box *indicating its receipt*."  (Duprey Affidavit, ¶ 14 (emphasis added).)  She was not aware of any other factor that would have suggested a failure to deliver the Notice.

The Tupazes did not pay the overdue taxes, redeem the property, or otherwise respond by the appointed date, and the County initiated foreclosure proceedings in the County Court of Clinton County.  On February 20, 2004, the County Court entered a default judgment of foreclosure against the Tupazes as well as several other taxpayers who had not redeemed their property.  *Tupaz*, 499 F. Supp. 2d. at 186.  The County did not send the Tupazes a notice of judgment[3] and the Tupazes learned of the foreclosure in March 2004, when Mr. Tupaz called the County Treasurer's office and was told that the County had foreclosed on the properties.  *Id.*  The Tupazes contend that this call was the first time they learned that they owed taxes and that the County had instituted foreclosure proceedings.  Duprey

---

[2]  In her deposition testimony of August 2005, Duprey stated that she did not remember who checked the website or when exactly the website was checked in this case , but in her December 2006 affidavit she stated that someone in the County Treasurer's office checked the website "on th[e] same day [on which they received the delivery receipt] or shortly thereafter."  (Duprey Affidavit, ¶ 13.)

[3] New York state law does not require such notice.  New York Real Property Tax Law § 1131 states:

> In the event of a failure to redeem or answer by any person having the right to redeem or answer, such person shall forever be barred and foreclosed of all right, title, and interest and equity of redemption in and to the parcel in which the person has an interest and a judgment in foreclosure may be taken by default as provided by subdivision three of section eleven hundred thirty-six of this title. A motion to reopen any such default may not be brought later than one month after entry of the judgment.

We have previously held that this provision does not require service of the default judgment of tax foreclosure in order to begin the thirty-day period within which a motion to reopen must be filed when the government has given notice of foreclosure. *See Weigner v. City of New York*, 852 F.2d 646, 652 (2d Cir. 1988).

5

attested that, during this phone call, Mr. Tupaz admitted that he had signed the October 2003 delivery receipt.

Shortly thereafter, the Tupazes sought to vacate the foreclosure and set aside the default judgment in state court. After concluding that the Tupazes were properly served with notice of foreclosure and that their motion to reopen proceedings was time-barred under the applicable statute of limitations, the court denied their request in a decision which was subsequently affirmed on appeal. *See In re Foreclosure of Tax Liens by County of Clinton*, 17 A.D.3d 914, 914-15 (N.Y. App. Div. 3d Dep't 2005).

The Tupazes then brought this Section 1983 action in the United States District Court for the Northern District of New York, claiming that defendants' alleged failure to serve them with notice of the foreclosure deprived them of due process of law and that the state statute providing for personal notice of foreclosure is unconstitutional. The District Court (Thomas J. McAvoy, *Judge*) concluded that the Tax Injunction Act, 28 U.S.C. § 1341, deprived it of subject matter jurisdiction over challenges to the enforcement of state tax law and, in the alternative, that the Notice of Foreclosure did not violate due process. The Tupazes then filed a timely appeal in our Court.

On appeal, we concluded that the District Court had subject matter jurisdiction to resolve the Tupazes' claims. *See Luessenhop v. Clinton County*, 466 F.3d 259, 264-68 (2d Cir. 2006).[4] We remanded the case for reconsideration of the Tupazes' due process claims in light of the Supreme Court's intervening decision in *Jones v. Flowers*, 547 U.S. 220, 225 (2006) (holding that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so"). *See Luessenhop*, 466 F.3d at 271-72. We ordered that, on remand, the District Court make a finding as to whether the County thought

---

[4] The other plaintiffs in the *Luessenhop* appeal, whose claims were previously consolidated with the Tupazes' in order to resolve a common question of subject matter jurisdiction, are not parties in this appeal. *See Luessenhop v. Clinton County*, 466 F.3d 259, 262-64 (2d Cir. 2006). The Miners, who are joint appellants in this appeal, were not parties in the *Luessenhop* appeal.

6

that the Notice of Foreclosure had failed to reach the Tupazes and, if so, whether their "failure to act is excused because [the first class] letters presumably had reached their desired destination." *Id.* at 272.

On remand, the District Court considered additional evidence and arguments, including the Duprey Affidavit, and granted summary judgment in favor of defendants. The Court determined that "[t]here is no evidence presented from which a reasonable fact finder could conclude that Defendants had any reason to believe that the Plaintiffs" had not received the Notice. *Tupaz*, 499 F. Supp. 2d at 188. The Court noted that neither the Notice nor the previous mailings had been returned. *Id.* It further reasoned that any suspicions about the line in the signature box were reasonably resolved by the confirmation on the Postal Service website. *Id.* Finally, the District Court observed that "there is no evidence that . . . anyone at Clinton County was aware of any facts before the final date of redemption that [the Tupazes] did not receive adequate notice." *Id.* at 189.

On that basis, the Court concluded that defendants had provided sufficient notice of the foreclosure to satisfy the requirements of due process. *Id.* at 190. The Court also concluded that New York Real Property Tax Law § 1125, which requires only certified mailing of a notice of foreclosure but does not require a return of the mail receipt, is consistent with the standard set forth in *Jones* for due process. *Id.* Citing our decision in *Weigner v. City of New York*, 852 F.2d 646, 652 (2d Cir. 1988) (concluding that due process does not require notice of the entry of foreclosure judgment where the property owner received notice of the foreclosure proceedings and an opportunity to respond), the Court rejected the Tupazes' challenge to the constitutionality of New York Real Property Tax Law § 1131. *Tupaz*, 499 F. Supp. 2d at 190. The Court further concluded that neither due process nor equal protection required that property owners be given a right to redeem their property after foreclosure. *Id.* at 190-91. In considering their claim that due process required they be given a right to any surplus proceeds obtained by the County in excess of the amount of taxes owed, the District Court ruled that the Tupazes lacked standing to bring this claim because the property had not yet been sold and the

7

County had not yet obtained any surplus proceeds. *Id.* at 192. The Court also observed that, assuming that the Tupazes had standing, due process did not require that plaintiffs be afforded a right to any surplus. *Id.*

This appeal followed.

**The Miners**

It is undisputed that the Miners received notice of the foreclosure on their property also located in Clinton County. Defendants sent a notice of foreclosure in October 2005, indicating that the Miners were required to pay the overdue taxes from the previous two years by January 2006. The notice also stated that the only methods of acceptable payment were cash, money order, or certified check. The Miners did not pay the taxes by the due date and defendants initiated default proceedings in the County Court for Clinton County.

It is undisputed that, in March 2006, Mrs. Miner called the County Treasurer's office and was informed that default judgment had not been entered but was expected to be entered the next day. Mrs. Miner did not pay anything, and the County Court entered the order of foreclosure on March 10, 2006. The Miners subsequently sought to reopen the foreclosure proceedings in order to vacate the judgment in County Court, but their request was denied. This decision was affirmed on appeal. *See Clinton County v. Miner*, 39 A.D.3d 1015, 1015-16 (N.Y. App. Div. 3d Dep't 2007).

The Miners also filed a Section 1983 action in the United States District Court for the Northern District of New York. They claimed that their rights of due process and equal protection require that the default judgment be vacated; that defendants should reconvey the property for full payment of the taxes owed; and that, if the property is not reconveyed, they should be permitted to retain any surplus obtained at a foreclosure sale of their property. They also argued that New York's Real Property Tax Law is unconstitutional to the extent that it does not permit vacatur of the judgment, reconveyance of

8

the property, and the right to retain any surplus. Finally, they objected to defendants' refusal to accept a personal check as payment for overdue taxes.

In an oral ruling, the District Court (Gary L. Sharpe, *Judge*) granted defendants' motion for summary judgment.. The Court concluded that the County was under no legal or constitutional obligation to sell the property back to property owners after foreclosure. With respect to the Miners' claim that they should be allowed to recoup the surplus, the Court held that "[w]here adequate steps are taken to notify the owners . . . the county is not compelled to return the surplus from a tax sale." (Transcript of Miner Hearing, April 12, 2007, at 20.) Finally, the Court ruled that the County's requirement that delinquent taxes be paid by cash, money order, or certified check was constitutionally acceptable. This appeal followed.

## DISCUSSION

As we have observed on many occasions, "[w]e review *de novo* a district court's grant of summary judgment." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). Summary judgment is appropriate only if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "A fact is material when it might affect the outcome of the suit under governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could [have] return[ed] a verdict for the [appellant]." *McCarthy*, 482 F.3d at 202 (internal citations and quotation marks omitted). In reviewing the record, we "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Id.* (internal quotation marks omitted). Although the burden of demonstrating that no material fact exists lies with the moving party, "[u]nless the nonmoving party offers some hard evidence showing that its version of the events is not wholly fanciful, summary judgment is granted to the moving party." *Id.* (internal quotation marks and brackets omitted).

9

**Notice of Foreclosure**

The Tupazes contend that defendants knew or should have known that the Notice of Foreclosure did not reach the Tupazes and that, in light of that fact, defendants' failure to take additional steps to give notice was a violation of the Tupazes' right to due process pursuant to *Jones v. Flowers*, 547 U.S. 220 (2006).

In the context of real estate foreclosures, due process does not require actual notice. *Dusenbery v. United States*, 534 U.S. 161, 170 (2002). Rather, the government must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Indeed, "[t]he reasonableness and hence the constitutional validity of [the] chosen method [of notice] may be defended on the ground that it is in itself reasonably certain to inform those affected." *Id.* at 315; *see also id.* ("[W]hen notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."). In *Jones*, in which a notice of foreclosure and a notice of tax sale were returned and stamped "unclaimed," the Supreme Court recognized that the government may have additional obligations "when the government becomes aware prior to the taking that its attempt at notice has failed." 547 U.S. at 227. Accordingly, when the government has "promptly [acquired] additional information" that its notice of foreclosure failed to reach the intended recipient, *id.* at 231, it "must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225; *see also id.* at 229 (observing that, in such circumstances, "[n]o one 'desirous of actually informing' the owners" of the pending foreclosure and sale would "do nothing when a certified letter sent to the owner is returned unclaimed" (quoting *Mullane*, 339 U.S. at 315)).[5]

---

[5]In *Jones*, the Arkansas Commissioner of State Lands sent a notice of foreclosure to Jones by certified mail after Jones had failed to pay his property taxes. 547 U.S. at 223. Prior to the late payments that prompted the notice, Jones had no history of delinquent property tax payments. *Id.* No one was at Jones' home to sign for the notice of foreclosure when delivery was attempted, and the Postal Service ultimately returned the letter to the Commissioner as "unclaimed."

The Tupazes interpret our statement in *Lussenhop* that the District Court was required to "ask . . . whether the County *thought* that the Tupazes had received notice," 466 F.3d at 272, to require a finding of defendants' subjective intent. We now clarify that a District Court is required to examine whether a defendant's belief was objectively reasonable under the circumstances. *See Jones*, 547 U.S. at 226 (requiring "notice reasonably calculated, under all the circumstances" (quoting *Mullane*, 339 U.S. at 314)).

The record in this case compels the conclusion that defendants reasonably believed that the Notice of Foreclosure reached the Tupazes. We agree with the District Court that the Tupazes presented no evidence that "anyone at Clinton County was aware of any facts before the final date . . . that [the Tupazes] did not receive adequate notice." *Tupaz*, 499 F. Supp. 2d at 189. The Notice, which had been sent by certified mail, was never returned to defendants. *Cf. Jones*, 547 U.S. at 224 (noting that two notices had been returned and stamped "unclaimed"). In addition, none of the previous letters sent by first class mail to the Tupazes' home in Staten Island had been returned, creating a presumption that they had been delivered to the correct address. *See Akey v. Clinton County*, 375 F.3d 231, 235 (2d Cir. 2004) ("Where . . . the County provides evidence that the notices of foreclosure were properly addressed and mailed in accordance with regular office procedures, it is entitled to a presumption that the notices were received."). Moreover, defendants reasonably relied on the certified mail delivery receipt which indicated that the Notice had been delivered. As the District Court determined, any suspicions about the line within the signature box were resolved by the confirmation on the Postal Service website, which "verif[ied] that the certified mail had been delivered and received." *Tupaz*, 499 F. Supp. 2d at 188.[6]

*Id.* at 224. Two years later, Jones' property was scheduled for a tax sale. The Commissioner sent a notice of sale to the same address by certified mail; this notice was also returned as "unclaimed." *Id.* The Supreme Court likened these circumstances to a case in which "the Commissioner prepared a stack of letters to mail to delinquent taxpayers, handed them to the postman, and then watched as the departing postman accidentally dropped the letters down a storm drain." *Id.* at 229.

[6] While the Tupazes dispute the fact that the defendants checked the website in October 2003, they have provided no "hard evidence" to support this dispute. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). The Tupazes do not contest the assertion that the Postal Service website indicated that a delivery occurred. Instead, they contend that Duprey or someone from the County Treasurer's Office did not check the Postal Service's website in October 2003 as Duprey contends. To support this contention, the Tupazes point to a website printout

Defendants also relied upon their previous dealings with the Tupazes and prior experience serving notice. The Tupazes, who had twice before been threatened with foreclosure, had responded to previous notices, for which delivery receipts had been returned with similarly illegible signatures. *Cf. Jones*, 547 U.S. at 223 (noting that taxpayer had no history of delinquent property tax payments).

The Tupazes argue that service by certified mail cannot satisfy the requirements of due process unless the delivery receipt is completed with an identifiable signature. We cannot agree. Although some courts have held the absence of a signature on a delivery receipt may defeat a presumption of delivery, *see, e.g.*, *Moore v. Dunham*, 240 F.2d 198, 199 (10th Cir. 1956) (holding that, under Oklahoma law, an unsigned return receipt was insufficient to establish valid service), we can find no support for the proposition that the signature must be identifiable. Indeed, under the standard established in *Mullane* and reaffirmed in *Jones*, a reasonable person "desirous of actually informing" a taxpayer of a pending foreclosure would not require a legible signature where, as here, delivery was confirmed using other means. *Jones*, 547 U.S. at 229 (quoting *Mullane*, 339 U.S. at 315). Defendants took the "additional reasonable steps," *Jones*, 547 U.S. at 234, of confirming the delivery on the Postal Service website and comparing the October 2003 delivery receipt to receipts from prior successful deliveries.

In the circumstances presented here, we agree with the District Court that Clinton County provided adequate notice to the Tupazes. Accordingly, there was no violation of the Tupazes' right to due process.

---

obtained from defendants displaying a date stamp of April 21, 2004. They infer from the printout that defendants checked the website *only* after the default judgment, not when they received the delivery receipt.

We agree that the website printout shows that defendants checked the Postal Service website in April 2004, but we disagree that it proves they did not check the website in October 2003. To the contrary, Duprey testified at her deposition that whenever her office encountered a questionable signature, which happened with some regularity, it was a routine procedure to verify delivery on the Postal Service's website. Although she could not remember at her deposition when exactly this procedure had been undertaken in the Tupazes' case, Duprey clarified in her subsequent affidavit that the Postal Service website was checked "on that same day" her office received the Tupazes' delivery receipt "or shortly thereafter." (Duprey Affidavit ¶ 13.) The April 21, 2004 printout does not contradict Duprey's sworn recollection and the Tupazes have not come forth with any basis in the record to doubt Duprey's credibility.

Accordingly, we find no error in the District Court's reliance on Duprey's affidavit in this regard.

12

**New York Real Property Tax Law § 1131**

The Tupazes contend that New York Real Property Tax Law § 1131 violates the constitutional guarantee of due process of law because it does not mandate service of notice of a default judgment of tax foreclosure where notice of foreclosure has been served. We rejected a similar claim in *Weigner v. New York*, 852 F.2d 646, 652 (2d Cir. 1998) and see no reason to reconsider that decision. The District Court properly relied on our holding in *Weigner* that "'due process only requires notice of the pendency of the action and an opportunity to respond' and does not require municipalities 'to send additional notices as each step in the foreclosure proceedings [is] completed.'" *Tupaz*, 499 F. Supp. 2d at 190 (quoting *Weigner*, 852 F.2d at 652). We agree with the District Court. To the extent that the Tupazes argue that actual notice was required, we also reject that premise. *See Jones*, 547 U.S. at 226 ("Due process does not require that a property owner receive actual notice before the government may take his property.").

**Right to Redemption after Foreclosure Deadline**

Both the Tupazes and the Miners argue that they were deprived of their rights to due process and equal protection because defendants did not permit a reasonable time for reconveyance after the default judgments were entered.

We agree with the District Court in both cases that defendants did not infringe on plaintiffs' rights to due process or equal protection by denying them rights of redemption after the default judgments were entered. Defendants provided plaintiffs adequate notice of foreclosure and an opportunity to be heard, which is all that due process requires. *See Tupaz*, 499 F. Supp. 2d at 191. Once judgment was entered, plaintiffs lost their rights to the property under New York law and had no further right to redemption. *Id.*; *see also* N.Y. Real Prop. Tax Law § 1131 (extinguishing "all right, title, and interest and equity of redemption" in a foreclosed property). We find no due process violation because defendants received adequate notice and an opportunity to be heard prior to the default judgment.

To maintain an equal protection claim, plaintiffs were required to show "adverse treatment of individuals compared with other similarly situated individuals [and that] such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (internal quotation marks omitted). Neither the Tupazes nor the Miners have shown that defendants treated them adversely compared with similarly situated property owners, nor have they shown that any adverse treatment was based on impermissible considerations. New York law expressly permits counties to establish a deadline for redemption and to reject offers of payment after that date. *See* N.Y. Real Prop. Tax Law § 1110(1) (limiting payment of tax lien to a period "*on or before the expiration of the redemption period*"(emphasis added)). The fact that other counties may allow redemption after judgment is insufficient to sustain an equal protection claim against Clinton County. We therefore agree with the two district judges that plaintiffs have not established violations of their rights to due process and equal protection.

**Retention of Surplus From Tax Sale**

The Tupazes and the Miners also seek redress for an alleged infringement of their rights to due process and equal protection because Clinton County will not allow them to retain the surplus proceeds from the tax sale, *i.e.*, the amount of the sale less unpaid taxes, fees, and penalties. In support of their equal protection claim, they also contend that Clinton County has engaged in "predatory foreclosure practices" in order to raise additional revenue.

The District Courts in both cases properly dismissed plaintiffs' claims for a share of any surplus.[7] The retention of any surplus from a tax auction is constitutional because there was no violation of plaintiffs' right to due process related to the notices of foreclosure. *See Nelson v. City of New York*, 352

---

[7]It is likely that the Tupazes do not have standing because the Tupazes' properties have not been sold and there is no indication that a sale has occurred or is imminent, *see Tupaz*, 499 F. Supp. 2d at 185. However, we do not address this issue because we conclude that, even if the Tupazes had standing to bring this claim, there was no violation of their right to due process.

14

U.S. 103, 110 (1956) ("[N]othing in the Federal Constitution prevents [foreclosing on a property and retaining a surplus from a tax auction] where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings.").

Regarding their equal protection claims, the record does not support a conclusion that Clinton County has discriminated against plaintiffs on an impermissible basis compared to similarly situated tax payers. *See Bizzarro*, 394 F.3d at 86. The evidence offered to show that the County harbored an impermissible, profit-driven motive is merely a recitation of the amounts retained in tax foreclosure proceedings in the last several years. Proof that the County routinely retains the surplus from tax sales—a practice which the Supreme Court approved over fifty years ago in *Nelson*—does not indicate a discriminatory intent.

**Method of Payment**

Finally, the Miners allege that their right to due process was impaired because defendants refused to accept a personal check as payment for the overdue taxes, allegedly in violation of New York Real Property Tax Law § 1125. The District Court rejected this claim without elaboration. (Transcript of Miner Hearing, at 20.) On appeal, the Miners rely on an opinion by the New York State Comptroller stating that "a town may not adopt a local law which permits its tax collecting officer to refuse to accept a personal check and requires that payment be made by certified check, money order or bank check." Office of the State Comptroller, Op. No. 87-34 (Apr. 30, 1987), 1987 N.Y. St. Comp. 53, 1987 N.Y. Comp. LEXIS 150.[8]

Taken on its face, the Comptroller's opinion does not necessarily apply to a situation where, as in the Miners' case, a county permits payment by personal check for on-time payments but requires a

---

[8] We are not aware that any court has addressed the Comptroller's opinion or analyzed the underlying issue in the twenty years since the opinion was issued.

certified check for late payments.[9]  The statute cited by the Comptroller in support of his opinion does not provide any guidance on the permissible methods of payment for overdue property taxes.  *See* N.Y. Real Prop. Tax Law § 924 ("The collecting officer shall receive taxes at the times and places set forth in the notice of receipt of the tax roll and warrant and at any other time or place during usual business hours during the period of collection.").  In addition, we are unaware of any provisions of New York law that expressly prohibit counties from establishing reasonable regulations for the collection of delinquent property taxes, although at least one provision permits a county to set a method of payment where a county acts as a tax collection agency and collects taxes in installments.  *See* N.Y. Real Prop. Tax Law § 973 (authorizing payment "in installments as provided in the local law enacted by the county").

More important, the Miners have not explained how the prohibition of payment by personal check prevented them from paying their overdue taxes after they received the notice of foreclosure. The notice of foreclosure, which was sent in October 2005, stated the County's payment policy months in advance of the final date of redemption in January 2006 and the default judgment in March 2006. The Miners, who concede that they received this notice, had ample time to obtain a certified check or a money order but failed to pay their overdue taxes in *any* form.  Under these circumstances, the Miners were not deprived of their right to due process.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the judgments of the District Court.

---

[9]  We note that the Comptroller's opinion is addressed to "town[s]," not counties, but we need not address the legal significance this distinction may have, if any.

16