NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0442n.06

No. 24-3024

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 04, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| J.B., a minor, by and through G.B., her father and next friend, | ) ) ) | |
| Plaintiff-Appellant | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| HON. SANDRA STABILE HARWOOD, | ) ) | |
| Defendant-Appellee. | ) ) | |

Before: CLAY, WHITE, and DAVIS, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-appellant J.B., by and through her father and next friend, G.B., brought this putative class action against defendant-appellee Judge Sandra Stabile Harwood (Judge Harwood), the administrative judge of the Juvenile Division of the Trumbull County Court of Common Pleas, challenging the constitutionality of the court's practice of automatically denying pretrial diversion in all juvenile felony cases. The district court granted Judge Harwood's motion to dismiss, and J.B. appeals. We AFFIRM.

**I.**

In May 2023, while suffering psychologically due to a sexual assault at school and the school's failure to address the assault, J.B., a junior-high-school student, stole a neighbor's vehicle and caused property damage while driving the vehicle.[1] Prosecutors charged her with two Ohio

---

[1] Because the court is reviewing a motion to dismiss, it takes the well-pleaded allegations as true. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

felonies—Theft, Ohio Rev. Code § 2913.02, and Failure to Comply with Order or Signal of a Police Officer, Ohio Rev. Code § 2921.331.

J.B.'s case proceeded in the Trumbull County Juvenile Court and was governed by the Ohio Rules of Juvenile Procedure. Judge Harwood applied a Trumbull County policy (the "Court Policy") that juvenile felony cases are not eligible for diversion from formal court action, but rather must be formally processed. She ordered J.B. to serve time in a juvenile detention center, where J.B. suffered psychological trauma and developed a severe eating disorder.

J.B., by and through her father, sued Judge Harwood in her official capacity, asserting that applying the Court Policy to J.B.'s case violated her procedural due process and equal protection rights under the Fourteenth Amendment. Judge Harwood moved to dismiss the complaint for failure to state a claim, and the district court granted the motion.

## II.

This court reviews a dismissal for failure to state a claim de novo. *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citations and internal quotation marks omitted). When reviewing a 12(b)(6) motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## A.

J.B. first argues that the district court erred in dismissing her procedural due process claim. To assert a procedural due process claim, a plaintiff must allege "(1) [s]he had a life, liberty, or property interest protected by the Due Process Clause; (2) [s]he was deprived of this protected

interest; and (3) the state did not afford [her] adequate procedural rights prior to depriving [her] of the . . . interest." *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). This court has held that state law creates a liberty interest protected by the Due Process Clause when the state has (1) "used 'explicitly mandatory language in connection with requiring specific substantive predicates' to place substantive limitations on official conduct," and (2) "mandated a specific outcome if the substantive predicates are met." *Gibson v. McMurray*, 159 F.3d 230, 233 (6th Cir. 1998) (quoting *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).

In the district court, J.B. contended that Juvenile Rules 9(A) and 1(B), read in tandem, mandate a specific substantive outcome. Juvenile Rule 9(A) states that "[i]n all appropriate cases formal court action should be avoided and other community resources utilized to ameliorate situations brought to the attention of the court." Juvenile Rule 1(B) states:

> These rules shall be liberally interpreted and construed so as to effectuate the following purposes:
>
> (1) To effect the just determination of every juvenile court proceeding by ensuring the parties a fair hearing and the recognition and enforcement of their constitutional and other legal rights;
>
> (2) To secure simplicity and uniformity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay;
>
> (3) To provide for the care, protection, and mental and physical development of children subject to the jurisdiction of the juvenile court, and to protect the welfare of the community; and
>
> (4) To protect the public interest by treating children as persons in need of supervision, care and rehabilitation.

The district court determined that these rules do not create a protected liberty interest under the requirements set forth in *Gibson*.

On appeal, J.B. asserts that the two rules, interpreted in tandem, mandate a specific outcome—"the assessment of all juvenile offenders to determine whether to avoid court action."

(Appellant's Br. At 19–20). Although that might be good practice and appears to be consistent with the rules, the rules do not mandate such a practice in every case and thereby prohibit general rules applicable to particular circumstances.

First, Rule 9(A) does not contain "explicitly mandatory language," *Hewitt*, 459 U.S. at 472—the words "should be avoided" are qualified by the introductory phrase "[i]n all appropriate cases" and are thus discretionary. The rule also does not contain "specific substantive predicates," *Hewitt*, 459 U.S. at 472, for which it "mandate[s] a specific outcome if the substantive predicates are met," *Gibson*, 159 F.3d at 233. Rather, it merely states that courts should avoid formal court action "[i]n all appropriate cases." Although Rule 1(B) does contain mandatory language, stating that the Juvenile Rules "shall be liberally interpreted and construed," the Ohio Supreme Court has held that this command does not make the language in Rule 9(A) mandatory. In *In re D.S.*, 93 N.E.3d 937, 938–39 (Ohio 2017), the state challenged a juvenile court's decision to dismiss a case and thereby avoid formal court action under Juvenile Rule 9(A), arguing that the factual record was too limited for the court to properly dismiss the case. The Ohio Supreme Court concluded that although Rule 1(B) requires that Rule 9(A) be "liberally interpreted and construed" to serve the objectives of the juvenile justice system, including "protect[ing] the welfare of the community," "juvenile courts are vested with considerable discretion by virtue of the language of the foregoing rules." *Id.* at 940. The court further explained that "we will not reverse an order to dismiss a complaint under [Juvenile Rule] 9(A) absent an abuse of discretion. A court abuses its discretion by taking action that lacks reason, justification, or conscience." *Id.* This indicates that Rule 9(A), even interpreted in tandem with Rule 1(B), does not "mandate[] a specific outcome," *Gibson*, 159 F.3d at 233, in any particular case. Accordingly, the district court did not err in

concluding that the rules do not create a protected liberty interest, and that J.B. therefore did not sufficiently state a Fourteenth Amendment procedural due process claim.[2]

**B.**

J.B. also contends that the district court erred in dismissing her equal protection claim. In order to assert an equal protection claim, a plaintiff must allege that a state actor is "mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The district court concluded that J.B. had not sufficiently alleged an equal protection claim because she did not allege that she is a member of a suspect class and failed to identify a constitutionally protected right violated by the Court Policy.

J.B. asserts that this conclusion was erroneous because she "has plead[ed] that a dichotomy exist[s] between the Trumbull Juvenile Court and other Ohio juvenile courts pertaining to the use of Juvenile Rule 9" and "[t]here is no rational basis for" the Court Policy creating that dichotomy. (Appellant's Br., at 25). But, as explained previously, J.B. has failed to support her assertion that the Court Policy burdens a constitutionally protected right. She also has made no allegation that she is a member of a suspect class. *See Lyng v. Castillo*, 477 U.S. 635, 638 (1986) (holding that a group of people does not constitute a suspect class when "they have not been subjected to discrimination; they do not exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group; and they are not a minority or politically powerless").

---

[2] We note that the question whether the Court Policy is consistent with the Ohio Juvenile Rules is a separate question of state law. The question before us is whether the rules create a constitutionally protected liberty interest in individual consideration for diversion in felony cases.

Finally, J.B. has not demonstrated that the Court Policy violates the Equal Protection Clause by "treat[ing] one differently from others similarly situated." *See Radvansky*, 395 F.3d at 312. A state actor can violate the Equal Protection Clause if it treats people "within its jurisdiction" differently from one another. *See* U.S. Const. amend. XIV, § 1 ("No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."). However, case law does not indicate that an actor violates the Equal Protection Clause when it causes people "within its jurisdiction" to be treated differently from people who are *not* "within its jurisdiction."

For example, in *Gilday v. Bd. of Elections of Hamilton Cnty., Ohio*, 472 F.2d 214, 216 (6th Cir. 1972), the plaintiffs argued that because their county municipal court had fewer judges than other municipal courts, litigants in their county received hearings that were less meaningful than those in other counties, which violated the Equal Protection Clause. This court rejected that argument, explaining that "the state is [not] required by the equal protection clause to extend to each of its subordinate units of government, whether it be a county, a city, or otherwise, precisely the same kind or quality of judicial hearing so long as the hearing afforded meets due process standards." *Id.* at 216–17; *see also Boynton v. Fox W. Coast Theatres Corp.*, 60 F.2d 851, 854 (10th Cir. 1932) (concluding that there was no Equal Protection Clause violation when a county attorney enforced a penal law that county attorneys in other counties were not enforcing); *Miner v. Clinton Cnty., N.Y.*, 541 F.3d 464, 474 (2d Cir. 2008) ("The fact that other counties may allow redemption after judgment is insufficient to sustain an equal protection claim against [a county that does not do so].""); *Rodgers v. Johnson*, 174 F. App'x 3, 5 (3d Cir. 2006) (holding that a plaintiff did not have a viable equal protection claim when a county imposed a requirement that no other counties in the state imposed because "[the] Equal Protection Clause relates to equality

between persons as such, rather than between areas" (quoting *McGowan v. State of Maryland*, 366 U.S. 420, 427 (1961))). Accordingly, the district court did not err in concluding that causing juveniles in Trumbull County to be treated differently from juveniles in other counties does not violate the Equal Protection Clause.

## C.

J.B. also argues that Judge Harwood is subject to suit under *Ex Parte Young*, 209 U.S. 123 (1908).[3] Because the district court did not reach this issue and it is not necessary to our decision here, we decline to consider it.

## III.

For the reasons set out above, we affirm the district court's judgment.

---

[3] Defendants who are sued in their official capacities, as Judge Harwood was, "stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). This suit is therefore "the equivalent of a suit against the governmental entity" for which that defendant works. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).